IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>NORTEL NETWORKS, INC., *et al.*,<br><br>              Debtors.<br><hr>SNMP RESEARCH INTERNATIONAL, INC. and<br>SNMP RESEARCH, INC.<br><br>              Plaintiffs,<br><br>v.<br><br>NORTEL NETWORKS, INC., *et al.* and<br>AVAYA, INC.,<br><br>              Defendants. | Bankr. Case No. 09-10138-KG<br><br><br><br><br><br><br>Adv. Pro. No. 11-53454-KG<br>Civ. No. 15-449-LPS |

## MEMORANDUM

SNMP Research International, Inc. and SNMP Research, Inc. (together, "SNMP") move this Court pursuant to 28 U.S.C. § 157(d) to withdraw the reference (D.I. 1) (the "Motion") of their adversary complaint (Adv. Pro. No. 11-53454, D.I. 1) against Nortel Networks, Inc. and Avaya, Inc. For the reasons stated below, the Court will deny SNMP's motion.

**I.    BACKGROUND**

On January 14, 2009, Nortel Networks Corporation's United States subsidiaries filed a petition for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). (Bankr. Case No. 09-10138, D.I. 1) Nortel Networks Corporation also filed insolvency proceedings that same day in the Ontario Superior Court of Justice ("Canadian Court"). The Bankruptcy Court has since entered orders implementing cross-border guidelines to harmonize the administration of the bankruptcy between the two Courts. (Bankr. Case No. 09-10138, D.I. 990, 3922)

SNMP filed a motion in the Canadian Court seeking relief from the automatic stay ("Stay Relief Motion") in order to file an adversary complaint against the Debtors[1] in the Bankruptcy Court. (D.I. 1-1 at 3) The Debtors agreed that SNMP could file the adversary proceeding on the condition that it would be immediately stayed until those parties completed mediation. (*Id.*) On November 2, 2011, SNMP filed its adversary complaint ("the Complaint") against the Debtors, Avaya, Radware, Ltd., and other defendants. (*Id.*; D.I. 1-2 at 3) The Complaint alleges that the Debtors engaged in unauthorized post-petition use, distribution, license, and sale of SNMP's intellectual property. (D.I. 1-1 at 4; D.I. 1-2 at 3) The Complaint further alleges that the Debtors sold this intellectual property without authorization to Avaya and others, and that these purchasers also violated SNMP's intellectual property rights. (D.I. 1-1 at 4; D.I. 1-2 at 3–4)

SNMP agreed to extend the time for the Debtors to respond to the Complaint until 30 days after the Canadian Court ruled on the Stay Relief Motion. (D.I. 1-1 at 3) The other Defendants were not involved in this agreement. (D.I. 1-3 at 6) Avaya answered the Complaint on March 2, 2012. (*Id.*) Radware filed a motion to dismiss, which the Bankruptcy Court has since granted. (*Id.*) Nearly two years later, in February 2014, SNMP entered into separate stipulations with the Debtors and with Avaya. (D.I. 1-1 at 5; D.I. 1-2 at 5) Both stipulations agreed to stay this adversary proceeding until 30 days after the Canadian Court ruled on the Stay Relief Motion. (D.I. 1-1 at 5; D.I. 1-2 at 5) On February 27, 2015, the Canadian Court denied the Stay Relief Motion, holding that the claims against the Canadian Debtors would proceed in that Court.[2] (D.I. 1-2 at 5) This ruling triggered the end of the stipulated stays between SNMP

---

[1] Unless otherwise noted, "the Debtors" will refer to Nortel's United States subsidiaries that have filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware.

[2] SNMP has since amended its Complaint to remove the Canadian Debtors, Radware, and several causes of action. (D.I. 1-3 at 5)

2

and the Debtors and between SNMP and Avaya. SNMP filed its Motion to Withdraw the Reference and a supporting brief on June 2, 2015. (D.I. 1; D.I. 1-1) The Debtors and Avaya both filed briefs in opposition. (D.I. 1-2; D.I. 1-3)

After briefing concluded, the parties provided notice of two additional developments. First, the Debtors filed a Rule 14 Motion in the Bankruptcy Court requesting leave to file a third party complaint against some of their international affiliates. (D.I. 14) SNMP then filed notice in this Court that it intended to raise this procedural issue at oral argument as further grounds for mandatory withdrawal. (*Id.*) Second, Avaya and SNMP filed a proposed stipulation agreeing to the following: (1) Avaya would withdraw its opposition to SNMP's Motion, (2) the parties would jointly request a scheduling conference in this Court, and (3) SNMP would agree not to seek to consolidate this case with related litigation pending in this Court before Judge Andrews. (D.I. 15 at 2) (citing *Avaya, Inc. v. SNMP Research International, Inc., et al.*, C.A. No. 12-191-RGA-MPT (D. Del.)) The Court conducted a hearing on August 27, 2015 and counsel for all parties presented oral arguments.

## II. CONTENTIONS

SNMP argues that 28 U.S.C. § 157(d) mandates that this Court withdraw the reference because the resolution of this adversary proceeding will require substantial and material consideration of the Copyright Act. (D.I. 1-1 at 2) Alternatively, SNMP contends that if the Court does not find that mandatory withdrawal is necessary, the Court should exercise its discretion to withdraw the proceeding for cause. (*Id.*) SNMP explains that cause exists primarily because this Court will ultimately need to preside over a jury trial on its non-core claims against Avaya. (*Id.*)

3

In response, the Debtors contend that grounds for mandatory withdrawal do not exist because the Bankruptcy Court's consideration of the Copyright Act will not be substantial and material. (D.I. 1-2 at 2) The Debtors further argue that the factors relevant to assessing whether cause exists for permissive withdrawal all weigh against SNMP's request. (*Id.*) Finally, the Debtors maintain that SNMP has impliedly consented to the jurisdiction of the Bankruptcy Court to enter final orders and has waived its right to a jury trial. (*Id.* at 18–19)

### III. STANDARD OF REVIEW

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title 11 to the United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet). Section 157(d) provides for situations when a district court ***may*** withdraw the reference and when it ***must*** withdraw the reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). For mandatory withdrawal, "[t]he party seeking withdrawal bears the burden of demonstrating that the action requires a substantial and material consideration of a federal statute outside the Bankruptcy Code." *United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009). For permissive withdrawal, "[t]he 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" *Hatzel & Buehler, Inc. v. Cent.*

4

*Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (quoting *In re DeLorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985)). To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

## IV. DISCUSSION

### A. Mandatory Withdrawal

"In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of Title 11 (the 'Bankruptcy Code') is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material." *In re Cont'l Airlines*, 138 B.R. 442, 444–45 (D. Del. 1992). This Court first adopted the "substantial and material" standard from the decision in *In re White Motor Corp.*, 42 B.R. 693 (N.D. Ohio 1984). *See Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 38 (D. Del. 1989). In defining the contours of that standard, *Orange & Rockland Utilities* explained that not every adversary complaint that alleges a violation of federal non-bankruptcy law necessarily requires substantial and material consideration of that law. *See id.* at 37–38 (mandatory withdrawal is not necessary "simply whenever non-bankruptcy issues [a]re considered").

This Court subsequently "clarified the meaning of 'substantial and material' by 'distinguish[ing] between meaningful consideration' of federal law outside of the Bankruptcy Code and its 'simple application'; when only a 'simple application of well-settled law is required, withdrawal is not mandatory.'" *In re CM Holdings, Inc.*, 221 B.R. 715, 721 (D. Del. 1998) (quoting 1 Collier's on Bankruptcy ¶ 3.04 [2] at 3–65). *In re CM Holdings* reasoned that "[t]his distinction furthers the policy of narrowing the scope of 28 U.S.C. § 157(d) in order to

5

prevent the establishment of an 'escape hatch' through which most bankruptcy matters could routinely be removed to the district court." *Id.* Meaningful consideration of federal law, for example, includes deciding an issue of first impression or analyzing the law beyond applying it to the facts of the case. *See In re Cont'l Airlines*, 138 B.R. at 447.

Here, SNMP's claims do not arise under title 11; thus, this Court must decide if "substantial and material" consideration of federal non-bankruptcy law is necessary. The Court concludes that it does not.

SNMP argues that withdrawal is mandatory because its lawsuit raises complex issues of federal copyright law. (D.I. 1-1 at 9–10) SNMP claims that the Bankruptcy Court will have to answer "[w]hat code is owned by SNMP Research and [analyze] whether a work is a derivative work and whether that derivative work is itself infringing." (*Id.* at 9) Whether SNMP owns certain code is a factual issue. Whether that work is derivative or infringing are both questions that require the application of law to the facts of the case. SNMP also asserts that the case will require the Bankruptcy Court to apply a "complex method for calculating damages" with "a variety of damages theories." (*Id.* at 10). Again, this merely requires deciding how the law applies to the facts of the case, rather than deciphering or interpreting the law. SNMP has not illustrated how the Bankruptcy Court's analysis will require meaningful (i.e., "substantial and material") consideration of federal non-bankruptcy law.

SNMP also argues that the Debtor's Rule 14 Motion provides a basis for mandatory withdrawal. (D.I. 14 at 2) Specifically, it claims that if the Debtors successfully add the international affiliates as third parties in the adversary proceeding, this will raise two issues of first impression: (1) whether those parties are necessary to the litigation, and (2) whether the statute of limitations on the claims against those new parties may have expired. (*Id.*) First, the

6

Court finds this concern speculative. The Bankruptcy Court has just yesterday held a hearing on the Rule 14 Motion; it is still uncertain whether these issues will impact these proceedings. (*Id.* at 1) (SNMP anticipating Debtors would schedule Rule 14 motion for hearing in September 2015) Second, SNMP has not carried its burden to demonstrate specifically how these issues would require a meaningful consideration of federal non-bankruptcy law. The Court therefore concludes that grounds for mandatory withdrawal of SNMP's claims do not exist.

### B.     Avaya's Right to a Jury Trial

The Court next addresses the Debtors' argument that SNMP has impliedly consented to the Bankruptcy Court's authority to enter final orders and waived its right to a jury trial on its non-core claims. (*See* D.I. 1-2 at 18–19) The Debtors argue that SNMP "voluntarily invoked jurisdiction of the Bankruptcy Court by filing its claims against Avaya and the other non-debtors there, even though its allegations against those defendants stem from their conduct *after* they allegedly received SNMPR software in the Nortel bankruptcy sale process." (*Id.* at 18) The Bankruptcy Court has since concluded that SNMP did not consent to its authority to enter final judgment in this case. (*See* D.I. 2-2 at 9) The Bankruptcy Court further noted that SNMP's late motion to withdraw the reference did not operate as a waiver to its jury rights. (*Id.* at 10–11)

The Court agrees with this conclusion. In order to determine whether a party has waived its right to a jury trial by invoking the jurisdiction of the Bankruptcy Court, a "Court must analyze whether the resolution of the adversary proceeding is part of the claims resolution process." *In re NDEP Corp.*, 203 B.R. at 912; *see also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1252 n.14 (3d Cir. 1994). "'[T]he filing of a proof of claim is a *necessary* condition' for the claims allowance process to begin . . . .'" *In re NDEP Corp.*, 203 B.R. at 912 (quoting *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993)). SNMP could

7

not have filed a proof of claim against Avaya—a non-debtor in the underlying bankruptcy case. Thus, it has not invoked the claims allowance process against Avaya and has not submitted to the equitable jurisdiction of the Bankruptcy Court with respect to that claim. *See id.* Accordingly, the Debtors' reliance on the fact that SNMP did not immediately file a motion to withdraw is irrelevant.[3] SNMP has not waived its right to a jury trial as against Avaya.

### C. Permissive Withdrawal

SNMP alternatively moves for permissive withdrawal under the first sentence of 28 U.S.C. § 157(d). Permissive withdrawal allows a district court to withdraw a proceeding for "cause shown." 28 U.S.C. § 157(d). The statute does not define this phrase, but the Third Circuit has provided guidance on the relevant factors. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). "The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). SNMP and the Debtors disagree as to the application of these criteria to the facts of the case. Avaya, though it takes no position, explained at the August 27 hearing that its principal concern is having its case held hostage to the Debtors' schedule.

---

[3] Even if SNMP's motion to withdraw was untimely, its suit against Avaya did not invoke the claims allowance process. *See Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98 (3d Cir. 1992). The Debtors cite two cases for the proposition that a party waives its right to jury trial by failing to withdraw the reference at the first opportunity: *In re Latimer*, 918 F.2d 136, 137 (10th Cir. 1990), and *In re Childs*, 342 B.R. 823, 830 (M.D. Ala. 2006) (relying on *In re Latimer* for support). To the extent that these cases stand for the Debtors' asserted proposition, it is not consistent with this Circuit's precedent. *See Billing*, 22 F.3d at 1252 n.14 (explaining that waiver requires submitting to claims allowance process); *In re NDEP Corp.*, 203 B.R. at 912–13 (D. Del. 1996) ("[C]ourts should not be eager to embrace an implied waiver of constitutional rights where there is an affirmative and timely assertion of those rights.").

SNMP does not view forum shopping as a relevant consideration here, but claims that there will be confusion as to whether the Bankruptcy Court has authority to enter final judgments on which claims if this case is not withdrawn. (D.I. 1-1 at 18) Withdrawing the reference, SNMP argues, will alleviate this confusion. Conversely, the Debtors contend that SNMP is engaging in forum shopping, as evidenced by the fact that it decided to initially file the adversary proceeding in the Bankruptcy Court, and now seeks to withdraw it to this Court. (D.I. 1-2 at 15–16)

In regard to these disputes, the Court finds that there is little risk of confusion regarding the Bankruptcy Court's authority to enter judgment in this case. In its June 2, 2015 Order, the Bankruptcy Court clearly outlines its authority with respect to SNMP's various claims. (*See* D.I. 2-1) The Court is also unpersuaded that SNMP's procedural maneuvering in this case—although unorthodox—was motivated by forum shopping. The Complaint named the Debtors as among the defendants; therefore, the Bankruptcy Court was not an illogical forum in which to file this case. *See Moore Corp. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089, 1100 (D. Del. 1995) (declining to find forum shopping because plaintiff filed action in a logical and proper place).

Next, SNMP argues that because the Bankruptcy Court cannot enter final judgment on its non-core claims against Avaya, it is more efficient to withdraw the case. (D.I. 1-1 at 18) Relatedly, SNMP points out that any jury trial on such claims must occur before this Court. (*Id.* at 18–19) The fact that SNMP has requested a jury trial, however, does not necessarily mandate withdrawal. This Court has explained that even for non-core claims for which a jury trial is requested, a bankruptcy court is capable of functioning in a role similar to that of a magistrate by handling pre-trial issues. *See Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 897 (D. Del.

9

1991). Additionally, while this Court has more experience overseeing copyright litigation than does the Bankruptcy Court, this does not detract from the Bankruptcy Court's proficiency in helping this Court effectively adjudicate such cases.

Although SNMP is entitled to a jury trial on its claims, it is speculative to assume at this early stage that such a trial will be necessary. SNMP has repeatedly noted in its brief that this proceeding is "in its infancy" and that "[d]iscovery in this matter has not yet begun." (D.I. 1-1 at 9; D.I. 1-4 at 17) As evident from the Bankruptcy Court's dismissal of Radware and other defendants from this case, some or all of SNMP's claims may not survive motions practice. If the Court were to withdraw this proceeding and SNMP's claims against Ayava subsequently settled or were dismissed, the Court would then be in the awkward position of potentially adjudicating a core claim against the Debtors—a matter generally more appropriate for the Bankruptcy Court.

The Bankruptcy Court is more familiar than this Court with this Adversary Proceeding, the underlying bankruptcy case, and the concurrent proceedings in the Canadian Court. The resulting delay associated with this Court familiarizing itself with those issues—at least at this early stage of the case—will cause unneeded expenses for the parties. *See In re Circle of Yoakum, Tex.*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (finding that judicial economy favored Bankruptcy Court resolving pre-trial proceedings because of its familiarity with facts of case); *see also In re EXDS, Inc.*, 2006 WL 2346419, at *2 (D. Del. July 20, 2006) (noting that "the Bankruptcy Court has the necessary resources to preside over the initial stages of these proceedings in an efficient and effective manner"). The Debtors' bankruptcy is a complex cross-border proceeding and the Bankruptcy Court has already implemented procedures to harmonize its administration with the Canadian Court. (*See* Bankr. Case No. 09-10138, D.I. 990, 3922)

Under the circumstances, it will be more economical for the parties and the Courts if the Bankruptcy Court continues to oversee this litigation.

SNMP argues that if this case is not withdrawn, different standards of review would apply to core and non-core claims, thus frustrating judicial uniformity. To support this contention, it relies on *In re Appleseed's Intermediate Holdings, LLC*, 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011). In that case, the court recognized that the combination of core and non-core claims could produce an irrational result on appeal. *Id.* It explained that:

> If this Court did not withdraw the reference, different standards of review would apply to different claims, depending on whether the claim was core or non-core. This could result in the application of different facts to different claims in the same case. For example, if the Bankruptcy Court found a certain fact relevant in both a core and a non-core claim, but this Court found that fact to be erroneous, though not clearly erroneous, then this Court would be required to accept that fact for the core claim and reject that fact for the non-core claim. Uniformity in bankruptcy administration would not be promoted by such an irrational result.

*Id.* SNMP argues that the same concerns are present here. (D.I. 1-1 at 17)

It is true that the Bankruptcy Court has recently determined that all claims against Ayava are non-core claims while all claims against the Debtors are core claims. (D.I. 2-1 at 2) The court's concern in *In re Appleseed's*, however, is only pertinent if the core and non-core claims rely on the same issues of fact. SNMP identifies only one common factual issue that may produce inconsistent findings: whether the Debtors transferred software to Avaya that contained SNMP's protected intellectual property. (D.I. 1-4 at 16) Although it is possible that the type of inconsistency described in *In re Appleseed's* could arise if this common issue of fact is subject to different standards of review, the Court concludes that SNMP has overstated this concern, which is speculative and at most affects only a small subset of the factual issues in this case.

Ayava's position, including its recent withdrawal of its objection to SNMP's Motion, complicates the analysis. The Court could dispose of this matter in three ways: (1) withdraw the proceeding completely, (2) withdraw only SNMP's claim against Avaya, or (3) decline to withdraw the entire proceeding. The Court can dismiss the second option outright; dividing this proceeding between two courts before it is absolutely necessary to do so would diminish judicial economy and raise the possibility of inconsistent decisions. (*See generally* Hr'g Tr. Aug. 27, 2015 at 13) (counsel for SNMP stating, "The whole point is to have one adjudication of the claims.") Though it is a close call whether to withdraw this case now, the Court is persuaded that the proceeding should remain before the Bankruptcy Court. At the August 27 hearing, counsel for SNMP offered several reasons in support of immediately withdrawing the case instead of waiting to withdraw it until it is ripe for trial. Counsel observed that another related SNMP lawsuit is presently before Judge Andrews, thus implying that possible efficiencies may result if both cases are before this Court. This argument is not compelling, however, because SNMP has recently stipulated that it would not seek consolidation of these cases. (D.I. 15 at 2) SNMP also argued that this Court may wish to withdraw the case now in order to rule on the Debtors' Rule 14 Motion. This would only cause further delay. That matter is already briefed in the Bankruptcy Court and, as of the date of this Court's hearing on SNMP's Motion, was expected to be heard in the Bankruptcy Court this month. (*See* D.I. 14 at 1) In fact, the Bankruptcy Court heard the Rule 14 Motion yesterday. (*See* Adv. Pro. No. 11-53454, D.I. 262) This Court could not have accommodated the same schedule.

The Court concludes that consideration of all of the appropriate factors favors denying SNMP's Motion at this time. Permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing it only when it is ripe for a jury trial, promotes judicial economy

12

and a timely resolution of this case. *See, e.g., Matter of Delaware & Hudson Ry. Co.*, 122 B.R. at 897.

The Court recognizes that this resolution is not without its drawbacks. Procedurally, the Bankruptcy Court will be able to enter final judgment on SNMP's claims against the Debtors, but only issue proposed findings of fact and conclusions of law on its claims against Avaya. *See* 28 U.S.C. § 157(c). Though such a scenario is not ideal, the Court notes that the complex framework of bankruptcy jurisdiction and the accompanying constitutional limitations make this difficult to avoid in some cases. This is especially true given SNMP's decision to initiate this suit against both parties in the Bankruptcy Court. The Court is also mindful of Avaya's concern that it feels that its suit may become hostage to the Debtors' schedule, but trusts that the Bankruptcy Court (like this Court) will factor Avaya's reasonable concerns into the schedule that will govern the pace by which this matter now proceeds.[4]

## V. CONCLUSION

For the reasons explained above, the Court will DENY SNMP's Motion to Withdraw the Reference (D.I. 1), without prejudice. The Court will consider a renewed motion for withdrawal of the reference only when the parties (through stipulation) or the bankruptcy judge (through a decision) identify the genuine issues of material fact which should be tried to a jury. A separate Order will be entered.

September 9, 2015
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[4] The Court will be receptive to a request from Judge Gross, should he deem it helpful, to put a trial date on this Court's schedule.

13