1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3      IN RE: NORTEL NETWORKS, INC., et al.
                                          :    BANKRUPTCY ACTION
4              Debtors.                   :    NO. 09-10138-KG
       -------------------------------------
5      SNMP RESEARCH INTERNATIONAL, INC.,  :
       and SNMP RESEARCH, INC.,           :    CIVIL ACTION
6                                         :
                 Plaintiffs,              :
7      v                                  :
                                          :
8      NORTEL NETWORKS, INC., et al.,     :
       and AVAYA, INC.,                   :
9                                         :    NO. 15-449-LPS
                 Defendants.
10                                             - - -

11                        Wilmington, Delaware
                          Thursday, August 27, 2015
12                        *Oral Argument Hearing*

13                             - - -

14     BEFORE:        HONORABLE **LEONARD P. STARK**, Chief Judge

15     APPEARANCES:              - - -

16
                  COLE SCHOTZ, P.C.
17                BY:  NORMAN L. PERNICK, ESQ.

18                       and

19                COLE SCHOTZ, P.C.
                  BY:  G. DAVID DEAN, ESQ.
20                      (Baltimore, Maryland)

21                       and

22                KING & BALLOW LAW OFFICES
                  BY:  RICHARD S. BUSCH, ESQ.
23                      (Nashville, Tennessee)

24                       Counsel for SNMP

25                               Brian P. Gaffigan
                                 Registered Merit Reporter

```
 1   APPEARANCES:  (Continued)

 2
                   MORRIS NICHOLS ARSHT & TUNNELL, LLP
 3                 BY:  DEREK C. ABBOTT, ESQ., and
                        ANDREW R. REMMING, ESQ.
 4
                        and
 5
                   CLEARY GOTTLIEB STEEN & HAMILTON, LLP
 6                 BY:  MATTHEW GURGEL, ESQ.,
                        LISA M. SCHWEITZER, ESQ., and
 7                      DANNI BYAM, ESQ.
                        (New York, New York)
 8
                            Counsel for Nortel Networks, Inc.
 9

10                 SULLIVAN HAZELTINE ALLINSON, LLC
                   BY:  WILLIAM D. SULLIVAN, ESQ.
11
                        and
12
                   HOLLAND & KNIGHT, LLP
13                 BY:  BARBRA R. PARLIN, ESQ., and
                        CHRISTOPHER M. SCOTT, ESQ.
14                      (New York, New York)

15                          Counsel for Avaya, Inc.

16

17

18

19

20

21                             - oOo -

22                    P R O C E E D I N G S

23                 (REPORTER'S NOTE:  The following hearing was

24   held in open court, beginning at 10:09 a.m.)

25                 THE COURT:  Good morning.
```

1            (The attorneys respond, "Good morning, Your

2    Honor.")

3            THE COURT:  I'll have you put your appearances

4    on the record for me, please.

5            MR. PERNICK:  Good morning, Your Honor.

6            THE COURT:  Good morning.

7            MR. PERNICK:  Norman Pernick from Coal Schotz.

8    Good morning.  I just wanted to take a quick minute and

9    introduce our side of the table.

10           I have with me Dr. Jeffrey Casey, the owner of

11   SNMP Research.

12           THE COURT:  Welcome.

13           MR. PERNICK:  My co-counsel, Richard Busch from

14   King & Ballow.

15           THE COURT:  Good morning.

16           MR. PERNICK:  And also my colleagues, David Dean

17   and Jonathan Grasso, also from Cole Schotz.

18           THE COURT:  Thank you.  Welcome to all of you.

19           MR. ABBOTT:  Your Honor, maybe I will do the

20   same thing, if I may.

21           THE COURT:  That would about helpful.  Thank

22   you.

23           MR. ABBOTT:  Your Honor, Derek Abbott from

24   Morris Nichols for the Nortel U.S. debtors.  Your Honor,

25   making the argument today will be Matt Gurgel from Cleary

1    Gottlieb.  Lisa Schweitzer, also from Cleary Gottlieb, who

2    is seated next to him; my colleague, Andrew Remming from

3    Morris Nichols; and Danni Byam also from Cleary as well.

4               THE COURT:  Welcome to all of you as well.

5               MR. SULLIVAN:  Good morning, Your Honor.

6               THE COURT:  Good morning.

7               MR. SULLIVAN:  Bill Sullivan of Sullivan

8    Hazeltine Allinson of on behalf of Avaya Inc.  With me

9    today is Barbra Parlin, from the firm of Holland & Knight.

10              MS. PARLIN:  Good morning.

11              MR. SULLIVAN:  Mr. Christopher Scott, also

12   from the firm of Holland & Knight.

13              MR. SCOTT:  Good morning.

14              THE COURT:  Welcome to all of you.  So we're

15   here for argument on the motion to withdraw the reference.

16              We'll hear from the moving party first.

17              MR. DEAN:  Good morning, Your Honor.  David

18   Dean of Cole Schotz on behalf of SNMP Research Inc. and SNMP

19   Research International Inc.

20              We're here today on our motion to withdraw the

21   reference to the adversary proceeding that we commenced in

22   the Bankruptcy Court.  The original adversary proceeding as

23   it was originally filed was filed against the U.S. Nortel

24   debtors, the objecting parties, the U.S. Nortel Canadian

25   debtors affiliates, and certain nondebtor purchasers of

1    Nortel assets in their bankruptcy cases, including, but not

2    limited to, Avaya Inc.

3            Our currently known claims against all of the

4    asset buyers except for Avaya Inc. have been resolved.

5    They're no longer parties to this proceeding.  And the

6    Canada Insolvency Court ordered in February or March that

7    the claims against the Canadian debtors have to proceed in

8    a separate forum in the Canadian court.

9            So the current defendants in this lawsuit are the

10   U.S. Nortel debtors who are objecting to the motion, Avaya

11   who has now consented to the motion, and the claims in those

12   occasion cases against those defendants in the second amended

13   complaint, Your Honor, are for copyright infringement under

14   the copyright act, misappropriation of trade secrets under the

15   Delaware statute, and breach of the contract against both sets

16   of defendants.

17           Now, the crux of the lawsuit against the U.S.

18   debtors is twofold.

19           First, we alleged that while operating

20   postbankruptcy, the U.S. debtors improperly used our

21   software outside the scope of the license agreement that we

22   have with Nortel.  We allege that they did this by using

23   our software in unlicensed products and also by allowing

24   Nortel to use software and these entities specific to Nortel

25   use our software when they were specifically not allowed to

1    do so.

2                    The second primary theory against the debtors in

3    the case is that in connection with the sale of their assets

4    through the business-line sales in the bankruptcy cases,

5    we believe that even though they were prohibited from doing

6    so under the sale orders and the Bankruptcy Code, Nortel

7    transferred improperly our source code and our software to

8    various asset buyers, including, but not limited, to Avaya.

9    And we believe that that conduct constitutes a violation of

10   the Copyright Act, Delaware trade secret laws, and the

11   license agreement.

12                   Now, as to Avaya, SNMP Research alleges that

13   Avaya openly and notoriously uses our software in products

14   without a license and with no authority to do so.  And we

15   also assert a separate claim against the U.S. debtors for

16   contributory infringement in connection with Avaya's

17   underlying infringement.

18                   So those are the primary claims and theories in

19   the case.

20                   With respect to the damages, we think that the

21   damages in this case are substantial, Your Honor.  They

22   include, but are not limited to, profit damages under the

23   Copyright Act, and while we don't know at this point,

24   because our expert reports have not yet been completed, the

25   exact products, transferred value of those products, and

1     the value of our software imbedded in those products, we

2     believe based on currently available information that we

3     may be due $100 million or more from the U.S. debtors just

4     for the transfer claim from the profit damages, and that we

5     may be entitled to $100 million or more from Avaya due to

6     the post-transfer infringement of which we think the debtors

7     are also contributorily liable.

8          The motion to withdraw the reference before the

9     Court today was filed on March 17th.  We filed that with an

10    accompanying motion required by the local bankruptcy rules

11    for determination of the claims against Avaya are not within

12    the purview of the Bankruptcy Court to enter final orders or

13    judgment.

14          We had a hearing in front of Judge Gross on

15    this motion after the briefing was completed, and Judge

16    Gross issued a written decision confirming our theory and

17    finding that he lacks the final adjudicatory authority with

18    respect to the claims against Avaya.

19          THE COURT:  So there is now no longer any

20    confusion on that point; correct?

21          MR. DEAN:  That is correct.  There is no longer

22    any confusion.  That is a definitive ruling.

23          But in so doing, Your Honor, I think it is

24    notable for purposes of today to mention that the Court

25    found that SNMP Research did not impliedly consent to the

1    entry of these final judgment of order against Avaya through

2    the timing of the motions to withdraw the reference or by

3    commencing the lawsuit in the Bankruptcy Court in the first

4    place.  Judge Gross was also hesitant, Your Honor, to find

5    implied consent based on our assertion of our jury trial

6    rights against Avaya.

7             So not only does Judge Gross's decision as you

8    mentioned definitively answer the question of the Court's

9    final adjudicatory authority over the claims against Avaya,

10   it also we believe puts the timeliness and jury trial waiver

11   issue that are before the Court today in the proper context

12   in our view.

13            So with that background, Your Honor, this brings

14   us to the present motion.  I think it probably makes sense

15   from the onset for me to give the Court a roadmap of where I

16   think the primary issues are and where my argument is going

17   to go today.

18            I'm going to first address the threshold issue

19   of timeliness.

20            Second, I'm going to give the Court three

21   separate and independent reasons why cause exists to

22   withdraw the reference under the statute and these are:

23            One, our jury trials rights against Avaya.

24            Two, the Third Circuit's factors in the *Pruitt*

25   case constitute separate cause and independent cause to

1     withdraw the reference not just as to the claims against

2     Avaya but also as to the claims against the Nortel debtors.

3                 And, three, Your Honor, mandatory withdrawal

4     of the reference is required in any event because this

5     case involves substantial and material consideration of a

6     non-bankruptcy federal statute and, in particular, the

7     Copyright Act.

8                 Finally, I'm going to address why we believe

9     it's appropriate under the circumstances of this case to

10     withdraw the reference immediately as opposed to waiting to

11     withdraw the reference until trial.

12                 With that background, Your Honor, starting with

13     the issue of timeliness.

14                 Avaya directly challenged timing but it is no

15     longer objecting to the motion. And for their part, the

16     debtors indirectly challenged timeliness in the context of

17     their implied consent argument which is no longer before

18     the Court, and it is moot in light of Judge Gross's

19     decision.

20                 I was actually happy that the Court asked for

21     supplemental letters when the Avaya stipulation was filed

22     because I thought it would be an opportunity to try to

23     narrow the issues today because I do not believe that

24     timing, timeliness or jury trial waiver, waiver issues

25     should be before the Court today given Judge Gross's ruling

1    and Avaya's agreement to walk away from the objection.

2              So the debtors, in their response, in their

3    letters to the Court, would not concede these points even

4    though I think they must.  So I'm going to address them

5    now.

6              Your Honor, even when Avaya was an objecting

7    party and was challenging timeliness, the Bankruptcy Court

8    in its decision refused to imply consent based on the timing

9    of the motion given the stage of the proceeding, discovery

10   hadn't even commenced at the time the motion was filed, and

11   the various stays and extensions that were given to the

12   various parties in the case.

13             Now, we don't think that the debtors should even

14   be permitted to challenge timing to the extent that they're

15   doing so.  They expressly agree in the letter agreement that

16   we discuss in our opening brief to stay the case from the

17   filing of the lawsuit until March 4th, 2015 when the Canadian

18   Court decided that the Canadian claims must proceed in Canada.

19   The motion to withdraw the reference was filed less than two

20   weeks after that decision.

21             The debtors also agreed in that letter agreement

22   not to object to any motions to withdraw the reference on

23   timeliness grounds related to the mediation that the parties

24   undertook which was the entire purpose of the letter

25   agreement in the first place.

1        So we believe that the letter agreement, Your

2   Honor, should be a complete bar to any timeliness challenge

3   on the debtors' part; but even if the debtors could

4   manufacture any challenge to timeliness, we think the Court

5   should nonetheless hold, as Judge Gross held in his opinion,

6   that the motion was timely given the stays of the case, the

7   various extensions that were given, and the complete lack

8   of any prejudice which the debtors required to show on a

9   timeliness analysis because they were the ones who agreed to

10  a stay which was the entire reason why we were prevented

11  from filing the motion to withdraw until the Canadian Court

12  issued its decision.

13       THE COURT:  Now, is all of what you said, does

14  that go to the timeliness of your motion to withdraw your

15  adversary proceeding with respect to the debtors or does it

16  also go to the motion to withdraw with respect to Avaya?

17       MR. DEAN:  Well, Avaya was not a party to the

18  letter agreement, so we did not have an agreement with

19  Avaya that Avaya would waive the timeliness.  So Avaya

20  independently was challenging timeliness with respect to

21  their claims.  But the debtors, I think it goes directly

22  to the debtors' claims because the debtors are barred from

23  challenging timeliness.

24       The letter agreement doesn't specifically say that

25  they won't challenge timeliness as to the debtors or as to

1    Avaya.  It just says they won't challenge the timeliness of

2    any motion to withdraw the reference.  So it's not specific as

3    to the claims against the debtors versus the claims against

4    any non-debtors, including Avaya.

5                    THE COURT:  So even if the debtors were willing

6    to concede that they don't have a timeliness argument, a

7    meritorious one with respect to themselves but they think

8    Avaya does and maybe Avaya doesn't want to raise it but the

9    debtors do on behalf of Avaya, your view is the letter

10   agreement precludes the debtors from making that argument?

11                   MR. DEAN:  That's the way I interpret the letter

12   agreement, Your Honor.

13                   THE COURT:  Okay.

14                   MR. DEAN:  And just, lastly, even if they could

15   make the argument, we think that it should be rejected for

16   the reasons stated in Judge Gross's decision and in our

17   papers.

18                   THE COURT:  Did Judge Gross indicate that he

19   thought you brought the motion to withdraw the reference

20   with respect to Avaya at the first reasonable opportunity

21   you had to do it?

22                   MR. DEAN:  What Judge Gross said in his opinion,

23   he didn't decide the timeliness issue because it was not an

24   issue that was before him.  But the crux of what he said

25   is that timeliness does not mean quick.  And even when Avaya

1   was making the challenge and before they withdrew their

2   objection, Judge Gross said that he thought this Court very

3   well might find that the motion was timely based on the

4   various extensions and the stay of the case and the early

5   nature of the case.  That is what Judge Gross said about it.

6           THE COURT:  Do you agree that if I reach the

7   timeliness issue, the burden is on you to show that you

8   moved to withdraw the reference at the first reasonable

9   opportunity after you had notice of the grounds for removal?

10          MR. DEAN:  Yes.

11          THE COURT:  How could I find that with respect

12  to Avaya, you have done that?

13          MR. DEAN:  Well, because we could not, as we

14  argued in our motion and our reply, we -- or in our reply,

15  we could not have withdrawn the reference of this case.

16  The whole point is to have one adjudication of the claims.

17  We were prohibited from filing a motion to withdraw the

18  reference of the entire case in light of the stay of the

19  case.  That is one reason, Your Honor.

20          The second reason is that Avaya has to show

21  that that they were prejudiced in a timely analysis.  And I

22  believe that is their burden.  And Avaya sat idly by, not

23  raising any issues throughout case and was just as happy to

24  sit by while we mediated with the debtors.

25          No. 3, Your Honor, Avaya came to us when the

1      first amended complaint was filed and asked us if they could

2      have an extension to respond to it and also wanted to be

3      part of the stay of the case.  So in February of 2014, Judge

4      Gross entered an order on consent of all the parties in

5      which Avaya was given an extension, an indefinite extension

6      to respond to the complaint until the Canadian Court decided

7      the issue of the motion for relief from stay that we have

8      before the Canadian Court and also stayed all the claims

9      against Avaya pending that ruling.  So because Avaya entered

10     into that agreement with us and got an extension and agreed

11     to the stay of the case, we don't think they can challenge

12     it either even though they weren't a party to the specific

13     letter agreement.

14             Now, if the Court does find that the motion was

15     timely filed, Your Honor, for the reference to be withdrawn,

16     the Court must either find cause under the first sentence of

17     28 U.S.C. 157(d) or find that the withdrawal is mandatory

18     under the second sentence of the statute.

19             The law, Your Honor, is clear that cause exists in

20     the first sentence of Section 157(d) and that it is automatic

21     if the preservation of jury trial rights are stayed.

22             This Court, more than once, has unequivocally

23     adopted this view in the *NDEP* case and the *Uni Marts* case

24     cited at pages 12 and 13 of our reply brief.

25             Now, as I mentioned, like the timeliness issue,

1    the jury trial waiver issue was one we thought was unique to

2    Avaya and one we would not have to argue about today.  But

3    despite the debtors' insistence that the argument remained

4    viable even though the jury trial right is only directed to

5    Avaya and Avaya has agreed to withdraw its objection, the

6    Third Circuit's decision in the *Billing* case discussed in

7    our reply brief confirms that a party does not waive a jury

8    trial right simply by commencing lawsuit in Bankruptcy Court

9    and that is what the debtors have argued.

10          The claimed subject to the jury trial waiver under

11    *Billing* must invoke the claim allowance process against the

12    debtors' estate.  There is no dispute here that the claims

13    against Avaya do not invoke that claims allowance process.

14    And despite all the briefing in this matter and the fact we

15    raised the *Billing* decision in front of Judge Gross and in

16    front of Your Honor, the debtors have never addressed the

17    *Billing* case, they have never even acknowledged its existence,

18    and they have not addressed Judge Gross's opinion which

19    acknowledges the applicability of the *Billing* case to the jury

20    trial waiver issue and under the facts of this case.

21          So with respect to the jury trial waiver issue,

22    Your Honor, like Judge Gross also suggested but did not

23    directly hold because the issue was not before him, we

24    respectfully submit that this Court show hold that the fil-

25    ing of a lawsuit in Bankruptcy Court in the first instance

1    in which we directly demanded a jury trial claim in every

2    version of the complaint as Judge Gross noted cannot

3    constitute a jury trial waiver against Avaya under the

4    Third Circuit standard in the *Billing* case.

5              So in addition to the jury trial right, which,

6    as I noted, makes withdrawing the reference against Avaya

7    automatic --

8              THE COURT:  Well, let me --

9              MR. DEAN:  Oh, sure.

10             THE COURT:  I want to make sure I understand

11   that.  Let's assume we agree with you that you haven't

12   waived your right to a jury trial.  When you say, therefore,

13   withdrawal of the reference is automatic, what exactly do

14   you mean by that?  I have to grant your motion and have to

15   withdraw the reference in full now?

16             MR. DEAN:  As to Avaya, only, and before trial.

17   I should have clarified that.

18             THE COURT:  Okay.

19             MR. DEAN:  Not, it doesn't require you to do it

20   before trial, and it doesn't require you to do it as to the

21   debtors.  But I'm going to get to that issue in a moment.

22             THE COURT:  Right.  Your fourth issue is why I

23   should do it now, but even if I agree with you that you

24   have the right to the jury trial versus Avaya, that doesn't

25   necessarily mean I need to withdraw the reference even with

1    respect to Avaya today.

2                 MR. DEAN:  Not in and of itself, correct.

3                 THE COURT:  Okay.

4                 MR. DEAN:  Now, the next issue I think is that

5    we think that the balance of the Third Circuit's factors

6    in the *Pruitt* case, which are the factors that deal with

7    permissive withdrawal of the reference which focus largely

8    on judicial efficiency and also invoke principles of forum

9    shopping or prohibiting forum shopping, favor withdrawal of

10   the reference of the entire case, not just the claims

11   against Avaya.

12                In fact, Your Honor, I just want to note that

13   the debtors, and Avaya as well for that matter, didn't even

14   advocate for a partial withdrawal of the reference to the

15   extent that the Avaya claims are subject to withdrawal in

16   their brief.  They didn't do it until their August 24th

17   letter to the Court in response to the Court's Order, and

18   they didn't do it until after they lost the Bankruptcy Court

19   hearing and Avaya agreed to walk away because I think, my

20   analysis of this is that's really all they're left with

21   is this argument as to why a partial withdrawal of the

22   reference is appropriate.

23                And I know the motion focuses on the *Pruitt*

24   factors in the context of withdrawing the entire case, but

25   what I really want to do is hone in on the reasons today,

1    because they have not raised this issue in their letter as

2    to why partial withdrawal of the reference makes no sense.

3    And I'm going to give the Court several reasons as to why

4    it doesn't.

5             THE COURT:  And that is fine.  You have already

6    made the point that the whole point here I think you said is

7    to have one adjudication of the claims.  And certainly one

8    would presume that it is best that everything go forward,

9    either here or with Judge Gross, but that just raises for me

10   a question of why should it be me as opposed to Judge Gross.

11   So I do want to make sure you focus at some point on that,

12   because if you persuade me that partial doesn't make sense

13   for anyone, why should it be me as opposed to him?

14            MR. DEAN:  Well, and I think I'll discuss

15   those in the context of these factors, too.  I think it will

16   answer that question as well.

17            Because the first reason why the reference of

18   the entire case shouldn't be withdrawn is because this is

19   the only court that can enter final orders with respect to

20   all claims in the case, and this was definitely decided by

21   Judge Gross's Order.

22            Now, the debtors attempt to mitigate this fact

23   and they do it in their letter and they do it in their brief

24   by trying to explain that there are differences in the

25   claims against Nortel and Avaya, that the infringement

1    claims against Nortel relate to the pre-sale and the sale

2    period and that the infringement claims against Avaya

3    relate to the post-sale period.  That is true.  We don't

4    dispute that.

5              But the truth is that this case, and these

6    claims against Avaya and Nortel, relates to the same Nortel

7    products, the same sale transaction, the same technology,

8    the same software, the same SNMP copyrights, and the same

9    exact legal causes of action against both sets of defendants.

10              So we submit that taking up the Avaya claims,

11    which we think you have to do because of the jury trial

12    right, because the Bankruptcy Court can't conduct a jury

13    trial, and keeping the debtors claims in Bankruptcy Court,

14    which is what they're advocating to the extent you do that,

15    would been entirely inefficient and uphill, and it could

16    also lead to inconsistent findings.  I'll give the Court a

17    couple examples how we think this could happen.

18              No. 1, we think that we're going to have to show

19    as part of our burden that our products, I'm sorry, that the

20    products transferred from Nortel to Avaya have our software

21    embedded in it.  That's a common issue to both of these

22    claims, and not only the transfer claim damages and the

23    profit damages against the debtor but also the post-sale

24    claims against Avaya.  That is a fundamental technical

25    issue that is going to require a lot of expert analysis

1    and testimony that will be the exact subject of both sets

2    of claims against both sets of defendants.

3            The other issue, Your Honor, is that we're

4    going to have to show that Nortel actually infringed on our

5    technology and our copyrights by transferring our source

6    code and our software to Nortel -- I mean to Avaya.  That

7    is also going to be relevant to both sets of infringement

8    claims.  We're going to have to show that Avaya actually

9    received the software in order to show that Avaya is

10   continuing to infringe on our software.

11           So these are two common issues that if you split

12   this case up could create inconsistent findings if this

13   Court were to take the Avaya case and the Bankruptcy Court

14   were to keep the claims against the debtors, which is

15   exactly what the debtors are advocating here in their August

16   24th letter should happen.

17           So the most important issue, though, and this

18   is the one that really would make partial withdrawal least

19   palatable.  And this one is that we are alleging that Avaya

20   infringed post-sale, but we also have a separate claim

21   against the debtors for contributory infringement based on

22   Avaya's underlying infringement.  In other words, if Nortel

23   didn't transfer the software to Avaya, then Avaya could not

24   have infringed on our copyrights.

25           So it would make no sense to try the

1    infringement claim against Avaya in this court and then try

2    the contributory infringement claim against the debtors in

3    another court, and even if the Court were to find that were

4    appropriate, the trial on the Avaya underlying infringement

5    claim would have to occur in this court first before the

6    case in the Bankruptcy Court could even be tried, because

7    you have to try the underlying infringement claim against

8    Avaya before you can even get to the contributory

9    infringement claim because that is an element.

10          The second reason why partial withdrawal makes

11   no sense, Your Honor, is because as I mentioned before, we

12   had a jury trial right against Avaya.  The Bankruptcy Court

13   will not -- theoretically it can but I think it ever has

14   conducted a jury trial.  So it has to be this court if the

15   Court finds that we can have a jury trial.  And the only

16   issue is whether we should have two trials or one.

17          Now, the debtors -- I want to mention, this

18   seems to be a really simple proposition to me, but I want to

19   address one point that the debtors raise in their August 24

20   letter.  They incorrectly argue and they make the statement

21   that the Bankruptcy Court can simply issue proposed findings

22   of facts and conclusions of law with respect to the claims

23   against Avaya.

24          This is simply not true.  This may be true

25   with respect to motions for summary judgment, dispositive

1    motions, but it certainly is not true with respect to a

2    trial because the Bankruptcy Court will not conduct a jury

3    trial in this case.  So if they can't conduct a trial, then

4    the Bankruptcy Court cannot issue proposed findings and

5    conclusion after a trial that it can't conduct in the first

6    place because of the jury trial right.

7         A couple more reasons why partial withdrawal of

8    the reference makes no sense, Your Honor.

9         At bottom, and at its core, this is a copyright

10   infringement case.  This Court is one of the most experienced

11   courts in the Country in dealing with intellectual property

12   disputes.  And I'll direct the Court to the *In Re:  Bennett*

13   case from Texas that we cited in our opening brief.  It has a

14   very good discussion of why a Bankruptcy Court should not try

15   a copyright infringement case, and it makes sense in those

16   type of cases to withdraw the reference for a District Court

17   who has more, far more experience in dealing with these kind

18   of issues.

19        THE COURT:  Doesn't our Bankruptcy Court in

20   particular have a great deal of experience with copyright

21   cases?

22        MR. DEAN:  Well, the debtors cited one case by

23   Judge Gross that dealt with a copyright issue, but we don't

24   think it is anything like this case, and we discuss in our

25   reply brief it wasn't the kind of technical, highly

1    technical and sophisticated issue that we have here.  The

2    exact reasoning for that is set forth in their reply.  They

3    gave us one example of a copyright issue that Judge Gross

4    decided, but I don't even think it's a close call that this

5    Court has far more experience dealing with copyright issues

6    than most courts in the country, especially in Bankruptcy

7    Court, even though I think this Bankruptcy Court, it is

8    possible they may have more copyright experience than other

9    Bankruptcy Courts, but as compared to the District Courts of

10   this Court, which I understand is the third, approximately

11   the third most frequent IP litigation case court in the

12   country, I just don't think it is even a close call.

13           Now, the debtors attack this argument by

14   attempting to couch this case incorrectly as one that just

15   simply arises under a dispute about the sale hearings and

16   the bankruptcy sale orders.  And Judge Gross is the one who

17   signed the sale order, which, by the way, I'm sure he didn't

18   draft.  But he signed the sale orders, and he is the best

19   one to interpret those orders.  But this case has absolutely

20   nothing to do with whether the sale orders were violated.

21   It is abundantly clear that if they infringe, the sale

22   orders are violated.

23           We're not asking for an interpretation of the

24   sale orders.  We are not asking for contempt under the sale

25   order.  We are not asking to undo the sale order.  We are

1    alleging that what they did in transferring our source code

2    outside the scope of the sale order is copyright infringement.

3    It's as simple as that.

4         So their attempt to muddle this analysis by

5    arguing that this is really about a sale order is nothing

6    more than a red herring.  This is nothing but a copyright

7    infringement case at its core.

8         Now, the one other point I want to raise about

9    this is in their letter, August 24.  They really mischaracter-

10   ize what happened in the Bankruptcy Court hearing by saying

11   that in permitting the sales to go forward, the debtors say

12   that the Bankruptcy Court expressly overruled the objections

13   that SNMP Research has now recast as claims in their papers.

14        I have to tell you, this sentence in the order

15   is by far the most puzzling of every argument and sentence

16   contained in all of the briefs because what happened at

17   these sale hearings is that all but the first one, which

18   isn't even at issue in this case, SNMP objected to the sales

19   to the extent that our software would be transferred as part

20   of the sales.

21        The debtors got up in Court and acknowledge that

22   that was not going to happen, told the Bankruptcy Judge that

23   they weren't transferring our software as part of the sales,

24   then agreed to put a carveout in the order specifically

25   acknowledging that they wouldn't do it and now somehow argue

1    that we lost a sale objection because the sales got approved.

2         The Court may want to ask the debtors about

3    this, I really can't explain, but I wanted to give my view

4    of what happened at the sale hearing, how I don't understand

5    that specific position.

6         But regardless of the debtors' characterization

7    of what happened at the sale hearing, this is simply a

8    copyright infringement case, and this Court is much more

9    equipped to handle it, and it would be much more efficient

10   for this Court to do so than the Bankruptcy Court.

11        Finally, on the efficiency, Your Honor.  We

12   don't think that withdrawing the reference in this case

13   will have any effect on the administration of the bankruptcy

14   case whatsoever for a couple reasons.  The debtors can't

15   even propose a Chapter 11 plan of liquidation until the

16   allocation decision is decided.

17        As Your Honor probably knows, I'm sure you do,

18   Judge Gross recently issued a decision denying a request for

19   direct certification to the Third Circuit of the allocation

20   decision.  And that decision was based primarily on the fact

21   that there were factual disputes in the allocation decision

22   that underlie the appeal.

23        So, Your Honor has that appeal.  It's been

24   directed to mediation.  We don't know how long that is going

25   to take.  But when you do decide the appeal, you may remand

1    it for further factual findings given these factual disputes

2    that prohibited direct certification.  You may affirm, you

3    may deny, you may not.  You may reverse.  It may go to the

4    Third Circuit.  There is $7.2 billion involved in this case.

5    It could go to the United States Supreme Court.

6            The point is it is pure speculation to suggest

7    that this case would delay the administration of the

8    bankruptcy case when nothing can happen with respect to full

9    adjudication of this case until that allocation decision

10   goes final.

11           Now, the other thing I will say about this,

12   Your Honor, is that because you are going to be the one

13   adjudicating this appeal, you are going to be hearing and

14   learning about all of the various sales because that is

15   what this appeal relates to.  You are going to get knowledge

16   through adjudicating this appeal that Judge Gross has, so

17   any argument about Judge Gross's familiarity with the sale

18   and the Nortel bankruptcy cases weighs against withdrawing

19   the reference is mitigated by the fact that you are the

20   Judge who will also be hearing that particular Nortel appeal.

21           THE COURT:  So it may be vindicated, but if we

22   take the perspective of today, certainly you won't deny

23   Judge Gross is a whole lot more familiar with the bankruptcy

24   and even with this adversary proceeding than I am.

25           MR. DEAN:  He is.  This adversary proceeding is

1    in its infancy, there hasn't been much that that has happened

2    except for the one hearing I described in the entry of a

3    scheduling order, so I'm not sure he is that familiar with it.

4    But to the extent that Judge Gross's overall knowledge of the

5    bankruptcy case is any factor in withdrawing the reference,

6    the only thing I will say about that is the debtors cite cases

7    that suggest that a Bankruptcy Judge's overall understanding

8    of other issues in a bankruptcy case weigh in favor of

9    withdrawing the reference.  But what I will say, and we

10   detailed this in our reply brief, many of those cases --

11   and I think most of those cases dealt with the issue where

12   the entire bankruptcy case should be withdrawn, not some

13   individualized copyright infringement case.  And the other

14   cases that they cite are cases where the Bankruptcy Court had

15   other similar type of preference or fraudulent transfer type

16   of litigations before it that are similar to what the subject

17   litigation was.

18         There is nothing in the Bankruptcy Court that is

19   even remotely close to this, so we don't think his overall

20   knowledge of the bankruptcy case is really any indication of

21   this specific unique individual copyright infringement case.

22         THE COURT:  What about the complexity of the

23   cross-border protocols in relationships here and the fact

24   that there has been parallel proceedings in Canada and Judge

25   Gross is intimately familiar with that, and while I may come

1    to be as you suggest, I'm not nearly where he is in terms of

2    familiarity with all that.  Isn't that a factor here?

3              MR. DEAN:  Yes, I will address that.  First of

4    all, let me just say that while there has been coordination

5    on the allocation, there was a joint trial in the allocation

6    trial and there had been joint hearings on the various sale

7    hearings, they weren't full blown evidentiary trials by any

8    means.  The only one I'm aware has been a full trial has

9    been the allocation trial.

10             And in this case, I think I have to give the

11   Court a little bit of background on this.  I think it is

12   really important.  In February, the debtors and the Canadian

13   debtors filed a motion together in each of their respective

14   courts to issue a joint protocol for the purposes of this

15   case.  The point of it was to try to invoke some discovery

16   process where everybody would be deposed in the same proceed-

17   ings one time and there would be some sort of mishmash

18   between the Canadian Rules of Procedure and the U.S. Rules

19   of Procedure and they wanted to get that approved.

20             When the Canadian Court denied our motion, the

21   Canadian debtors decided they were going to move forward

22   with their litigation, notwithstanding what was going on in

23   the United States, under the specific rules of Canada and

24   under the specific substantive laws of Canada.

25             We, on the other hand, are behind the Canadian

1    debtors as far as when we started, and this case is now

2    proceeding under the Federal Rules of Civil Procedure and

3    Bankruptcy Rules and U.S. substantive law.

4              So there was no coordination whatsoever in this

5    case.  There has been no coordination.  I'm not even sure

6    there ever will be coordination between the Canadian court

7    and the U.S. court in this particular litigation.  The only

8    communication that we are aware of is in February, in the

9    February status conference that we had before Judge Gross,

10   Judge Gross told us on record that Justice Newbould in Canada

11   had called him and told him he was not going to permit the

12   Canadian claims to proceed in the United States and he was

13   going to keep them in Canada.  Since then, everybody has

14   proceeded on separate paths.  And no one is suggesting, I

15   don't think the debtors are even suggesting that they're

16   going to put the pieces back together again at that point.

17             So I don't think that the potential cooperation in

18   this particular litigation is relevant.  But to the extent it

19   is, I think the opportunity to have joint discovery has long

20   passed because discovery is already proceeding on different

21   paths.

22             And I'll give you an example.  Mr. Case was

23   deposed for three days a couple of weeks ago in the Canadian

24   proceeding.  U.S. counsel showed up but wanted me to agree

25   that it was not -- it was without prejudice to their right to

1     take Jeff Case's deposition in the U.S. proceeding separately.

2              There is just no coordination here at all.  So I

3     don't think the Canadian proceeding or what is going on in

4     the proceeding has anything to do with this case.  There is

5     going to have to be -- I mean Your Honor is going to have

6     to choose, is there going to be two courts deciding these

7     issues, one in Canada and one in the United States, or are

8     there going to be three, two in the United States and one in

9     Canada, the way we see it?

10             The last thing I want to raise about the *Pruitt*

11    factors, Your Honor, is the forum shopping concept.  The

12    debtors accuse us of bringing this case in Bankruptcy Court

13    and adding Avaya and others for the purpose of bootstrapping

14    those non-debtor claims to basically drag the debtors up to

15    District Court and have a trial in District Court against

16    the debtors as opposed to the Bankruptcy Court.

17             I just think that this position is based on

18    revisionist history, Your Honor.  The reason why this case

19    was commenced in Bankruptcy Court with the express intention

20    to withdraw the reference as soon as we were able to do so

21    and the stay was lifted was based on a letter agreement.  It

22    was an agreement we reached with the Canadian debtors and

23    the U.S. debtors to be able to stop limitations from running,

24    commence the lawsuit in one forum against the Canadian

25    debtors, the U.S. debtors and non-debtors, try to have one

1    proceeding and move to withdraw the reference whenever the

2    mediation ended, if it didn't settle.  That was the primary

3    reason why we commenced the lawsuit in Bankruptcy Court,

4    because we would not have been able to get an agreement from

5    the U.S. debtors and Canada to stop litigation and mediate

6    if we proposed to institute the lawsuit in the first

7    instance in the District Court.

8             Now, from a legal standpoint, I would also want

9    to address one point that was raised in the August 24 letter

10   by the debtors.  They claim that they have some fundamental

11   right to have a reference, to have the case adjudicated in

12   Bankruptcy Court.

13            That is simply an incorrect statement of law,

14   and I will tell the Court why.  28 U.S.C. 959(a) expressly

15   permits a creditor to sue a debtor-in-possession for

16   postpetition conduct in the course of the debtors' business

17   without permission from the Bankruptcy Court in a U.S.

18   District Court.  And if that is done, it is, the statute

19   is clear that the Bankruptcy Judge could stay it but that

20   the jury trial claims, if the Bankruptcy Court does, are

21   expressly preserved.

22            How does this relate to forum shopping?  If our

23   primary goal was to drag the U.S. debtors into this case, it

24   would have been far easier for us to just use that statute

25   and sue them in District Court.  We would have had automatic

1    jury trial rights against them and Avaya, and there would

2    have been no debate about partial withdrawal of the

3    reference.  So I just don't think that the debtors' forum

4    shopping argument holds water.

5              THE COURT:  You're saying under that statute,

6    even though the case would be on my docket, the Bankruptcy

7    Judge could stay it?

8              MR. DEAN:  They could, but the statute says

9    the jury trial rights against the debtors are expressly

10   preserved if the Bankruptcy Judge does that.  And the

11   Bankruptcy Judge can't hold a jury trial, so it would

12   ultimately end up back in your court anyway.  We would have

13   moved to withdraw the reference if the stay was imposed

14   and the withdrawal as to the claims against Avaya and the

15   debtors would have been automatically here with the jury

16   trial right.

17             So if that was our primary goal, it would have

18   been a lot easier to go in that direction than try to

19   commence the suit in Bankruptcy Court and drag them up with

20   Avaya.  It makes no sense.

21             The last thing I will say about forum shopping

22   is in any motion to withdraw the reference, there is a

23   preference to litigate in District Court.  This is a

24   copyright case.  We think that District Court is more

25   capable for doing so.  You can't find somebody is forum

1    shopping just because they exercise their express right

2    under the statute to seek withdrawal of the reference.  The

3    withdrawal of reference statute would be meaningless.  And

4    they haven't showed anything more than that, so we don't

5    think forum shopping is a relevant consideration given all

6    these reasons at all.

7            Now, one thing I want to mention is that even if

8    the *Pruitt* factors don't weigh in our favor for partial

9    withdrawal, we think this is a case that warrants mandatory

10   withdrawal of reference.  For the reasons stated in the

11   reply brief, I won't detail it, I'll just refer you to it,

12   we don't think this case is one is one that -- we don't

13   think the law requires issues of first impression to justify

14   a mandatory withdrawal.  Nobody debates that this is a very

15   complicated copyright infringement case that is going to

16   require a lot of expert and specific application of each

17   product and each copyright provision of the Copyright Act.

18           We think that is enough to satisfy mandatory

19   withdrawal of the reference.  But to the extent it is not,

20   the debtors recently, as we indicated in our August 19th

21   letter to the Court, filed a motion to join the European

22   group of debtors into this lawsuit.  It's pending before

23   Judge Gross.  Now, it has not been decided yet, and it

24   hasn't even been scheduled yet.  It may be scheduled for

25   September 8th but we're not sure yet.

1          And the debtors' motion raises various issues of

2   first impression relating to the Practical Partner Doctrine

3   that we detailed in the August 19th letter, and I will just

4   refer the Court to that letter for those issues.

5          THE COURT:  But the point there is if -- and

6   we don't know if it will happen, but if the debtors' Rule

7   14 motion is granted and the European debtors come in or

8   creditors, I think, then that would in your view increase

9   your showing on whether there is a substantial, material --

10          MR. DEAN:  Correct.

11          THE COURT:  -- nonbankruptcy dispute.

12          MR. DEAN:  That is correct.

13          THE COURT:  You don't think you need that, but

14   it would help.

15          MR. DEAN:  We don't think we need that, but it

16   would help to the extent the Court finds the issues of first

17   impression are necessary.

18          One thing I will say is there could be an

19   issue of first impression on the Practical Partner Doctrine,

20   regardless whether it is denied, because one of the issues

21   we identified was whether or not a party, a defendant must

22   be a codefendant in the case to, in this case, make the

23   debtor jointly and severally liable for the European

24   debtors' portion of the profit from the sales.  And whether

25   the motion is granted or denied, if the motion is denied,

1    we're still going to try to get that, and it's an issue of

2    first impression as to whether the practical partner needs

3    to also be a defendant in the lawsuit.

4             And, No. 2, whether or not we can get damages

5    against the debtors for profits attributable to the

6    allocation to the European debtors when our claims, direct

7    claims against the European debtors may be statute barred

8    because we did not initially sue them, so those were two

9    issues I think are relevant if, and whether, the motion is

10   granted or denied.

11            THE COURT:  You only have about five more minutes.

12            MR. DEAN:  Sure.

13            THE COURT:  I want to make sure that you explain

14   to me why, even if I agree with all that you have said, why

15   I should withdraw the reference in whole or in part now as

16   opposed to as you say if these proceedings are in their

17   infancy, letting them play out and letting you come back and

18   seek to withdraw at a later date.

19            MR. DEAN:  Sure.  There are a couple reasons

20   why.  The first reason, Your Honor, is because when we filed

21   this motion, we thought it's possible that Judge Andrews

22   could ultimately get this case.  I'm not sure what the Court

23   will want to do with that, but Judge Andrews is overseeing

24   two related litigations.  One is our lawsuit against Avaya

25   related to violation or infringement on the same exact

1    copyrights on the same exact software related to different

2    Avaya products, products that Avaya distributed and sold

3    before the Nortel purchase.

4              So there are a lot of common issues there.  A

5    lot of the experts may be the same, and we think that one

6    single magistrate who I understand has held approximately

7    14 discovery hearings in this case, estimated to have taken

8    about 24 hours total, it would be good if one magistrate

9    oversaw all the discovery in this matter from the onset

10   because of the overlap in the issues.

11             The other issue is that there is another case

12   against Avaya's distributors and resellers which sue them

13   for damages related to Avaya's underlying infringement in

14   this case and in the case in front of Judge Andrews.  That

15   case is stayed pursuant to a stipulation pending the outcome

16   of this case and the Judge Andrews case, that I just explained.

17   Judge Andrews also has that case.  So we thought it would be

18   more appropriate for one judge and one magistrate to oversee

19   discovery on all these matters at one time.

20             The other issue is that if you withdrew the

21   reference now, the motion to join the EMEA debtors or the

22   European debtors would be before you.  You may want to

23   decide that motion because it will really dictate how your

24   trial is conducted and whether it is segregated and whether

25   you are going to have a trial of the EMEA debtors' claims at

1    the same trial.  And I just think that is a motion that is

2    more appropriately decided by the Court that is ultimately

3    going to try the case because the issue is going to be how

4    is the trial conducted and what is the structure of the

5    trial going to be.

6              So those are the reasons why we think it is

7    appropriate to withdraw the reference.

8              I want to make one more point.  This is one of

9    the most important points I'm going to make today, is that

10   Judge Gross has issued an order requiring a pretrial

11   conference to occur in this case in December.  He wants to

12   try to expedite this case because he doesn't want delay.

13   And we understand, and we agree.

14             We do not think the schedule is achievable.  It

15   is virtually impossible for us to do our expert reports and

16   do the kind of work that is necessary in a complicated case

17   like this before the deadlines that he set.  We have an

18   expert deadline in September.  We're not even going to be

19   close to be able to provide expert reports.  In fact, we

20   haven't even gotten the information that we needed from the

21   debtors to do their reports, so we're going to ask him for

22   an extension.

23             But as to why it relates to why the reference

24   should be withdrawn now, I think the worst thing that could

25   happen here is, and I have seen this done in other decisions

1    in motion to withdraw the reference, but it would be a

2    catastrophe in this case if the Court just deferred every-

3    thing and didn't make a decision as to whether we have a

4    right to withdraw the reference before trial, because if the

5    Court finds that you are going to withdraw the reference but

6    you are going to kick it back to Judge Gross pending trial,

7    we would respectfully ask that the Court, in its decision or

8    some other way, give us some indication of when you might be

9    able to have a trial in this case because that will dictate

10   the schedule that Judge Gross decides.

11        There is no reason for us to have this December

12   28th pretrial conference if Your Honor may not be able to try

13   this case for another year.  So if you gave us a proposed

14   month or some time frame for a trial, we could then back

15   that date into a more reasonable schedule in front of Judge

16   Gross if you find that we're entitled to a withdrawal of

17   the reference but that you are going to hold the case in

18   Bankruptcy Court until the trial commences.

19        THE COURT:  Before we let you sit, the

20   stipulation, which is unsigned at this point, indicates that

21   you agree you won't seek to consolidate the claims you have

22   against Avaya with those other cases.  I think it must be

23   the same Judge Andrews' cases you were mentioning before.

24   Again, I haven't signed the stipulation, but do you agree

25   that you are not going to be seeking to consolidate?

1          MR. DEAN:  That was part of the agreement.  We

2     wouldn't have done that anyway because the case in front of

3     Judge Andrews, expert reports have been submitted.  That

4     case is far ahead of this case, and there is a trial

5     scheduled in May.  So we don't think that this case is going

6     to be trial ready anyway before that trial will be ready,

7     and so we didn't have any problem accepting Avaya's request

8     because we wouldn't have sought to consolidate the cases

9     anyway based on where they are.

10          THE COURT:  And if I sign the stipulation, does

11     it have any impact, in your view, on whether I should grant

12     or deny the motion?

13          MR. DEAN:  Well, the only impact I think it has

14     is the ones that I have already mentioned on the various

15     issues that are at play.  I don't think timeliness is an

16     issue anymore.  I don't think the jury trial waiver is at

17     issue anymore.

18          I think that we would have won this hearing

19     anyway, and I think that -- I don't want to speak for Avaya,

20     but as to Avaya, their issues were virtually decided by the

21     Bankruptcy Judge's decision.  So we don't believe that

22     Avaya's agreement to withdraw their objection is some great

23     deal for us or anything.  We thought that was going to

24     happen anyway.  So I don't think that the stipulation itself

25     provides any impact.  I think the Court would have easily

1    found that the jury trial right existed based on Judge

2    Gross's decision and under the case law would have had

3    withdrawn the reference anyway.

4            THE COURT:  All right.  We'll give you a few

5    minutes for rebuttal even though I have used up all your

6    time.

7            MR. DEAN:  All right.  No problem.  Thank you,

8    Your Honor.  I appreciate the time.

9            THE COURT:  We'll hear from the debtors.

10           Good morning.

11           MR. GURGEL:  Thank you.  Excuse me.  Good

12   morning, Your Honor.  May it please the Court, Matthew

13   Gurgel of Cleary Gottlieb Steen & Hamilton for the U.S.

14   debtors.

15           Your Honor, obviously Mr. Dean covered a lot.

16   So I'm going to try to give you a start by giving you an

17   overview of what we think the key points are here.  And I

18   expect that I will address Mr. Dean's various points, though

19   perhaps not in the same order that he chose to address them.

20           Just to kind of frame this case the way we see

21   it, and it is kind of an overview what we think the main

22   points are, I think it is helpful to kind of take the points

23   in the way that SNMP has presented them.

24           SNMP is seeking, as you know, Your Honor, both

25   mandatory and permissive withdrawal of this entire case.

1    And so as Mr. Dean said, not just the noncore claims against

2    Avaya which SNMP claims it has a jury trial right, but the

3    indisputably core claims against the debtors.

4              It is our position that there is no basis

5    whatsoever in this case for mandatory withdrawal of the

6    reference, as I will get to when I get into more detail.

7    We don't think that SNMP has identified any material or

8    substantial issue of federal nonbankruptcy law that requires

9    Your Honor's expertise at the District Court level, much

10   less any issue that would require an immediate withdrawal

11   of this case.  And as to permissive withdrawal, we also

12   don't think that SNMP carried its burden to show that the

13   factors from the textbook provisions were automatic.

14             I'll get into these in more detail again, but

15   SNMP has acknowledged in its papers their primary claim in

16   this case, at least with respect to the debtors, are the

17   sale-based claims, which is that when the debtors undertook

18   to transfer the debtors access to various purchases of the

19   debtors' business line in the Bankruptcy Court in sales that

20   were overseen and approved by the Bankruptcy Court that the

21   debtors somehow harmed by and are liable to Avaya for that.

22             Mr. Dean addressed this or mentioned it, but

23   SNMP had notice of those sales.  It appeared in all of them

24   but the first one, as Mr. Dean said.  It filed objections,

25   and those objections were ruled on by Judge Gross.  We

1    certainly think that those objections are highly relevant

2    to the Bankruptcy Court's expertise and the *Pruitt* factors

3    as to whether this case should remain before Judge Gross.

4            The Bankruptcy Court also, as Your Honor

5    indicated, has knowledge of the debtors' broader bankruptcy

6    proceedings, and SNMP has tried to downplay the significance

7    of that.  But, again, there are two.

8            I think that Judge Gross's knowledge is highly

9    relevant to the resolution of the claims, especially the

10   core claims against the debtors.  Judge Gross oversaw the

11   sales not just with respect to the objections that SNMP

12   filed, but all of the sales.  And it is important to note

13   here that the parties that remain here in this case are just

14   the Nortel debtors and Avaya who is one of the buyers.  SNMP

15   is continuing to assert claims against the debtors not only

16   for the sales to Avaya but for the sale of Genband, the sale

17   to Ericsson, according to the complaint the sale to Sienna,

18   and a number of other entities that purchased Nortel's

19   business lines.

20           Judge Gross has substantial knowledge of those

21   businesses not just from his involvement in the sale but

22   from the fact that he presided over the allocation trial,

23   the order of which is now on appeal before Your Honor.  So

24   he knows these businesses.  He understands the debtors'

25   assets.  He knows, he understands the buyers.

1          The Bankruptcy Court also has a history of

2     coordinating with the Canadian Court.  And as Your Honor

3     mentioned, the cross court protocol is in place.  Again, I

4     will get into this in more detail, but Mr. Dean suggested

5     has been no coordination in this case, and we think that

6     is flatly wrong.

7          Judge Gross, as he indicated I think in his

8     February 27th decision when the parties had approached

9     Judge Gross, the U.S./Canadian debtors, about implementing

10    a schedule that would have things proceeding in parallel in

11    the U.S. and Canada, Judge Gross noted his great concern

12    that if the reference is withdrawn, the Canadian proceeding

13    would get too far ahead of the proceeding in the United

14    States, and that the net result wouldn't be good for the

15    debtors, it wouldn't be good for the claimants or anyone

16    else.  Moreover, I think SNMP has downplayed the significance

17    of the fact there has been actually extensive coordination

18    if not between the courts on the issue of discovery but

19    certainly between the parties.

20         Discovery that has already been produced in the

21    Canadian proceedings has been provided to the U.S. debtors.

22    If it has not already been provided to Avaya, I believe it

23    will be provided.  The U.S. debtors were afforded the

24    opportunity to sit in on the deposition of Dr. Case.

25         And just I'll briefly mention the point that Mr.

1    Dean mentioned about the debtors not being willing to stipulate

2    that that would be the only deposition of Dr. Case, which

3    obviously we wanted to reserve our rights under the U.S.

4    procedural rules, but to say that there is no coordination

5    there I think doesn't fit the facts.

6              So for those reasons and others I will get

7    into, Your Honor, we do think that for efficiency,

8    uniform administration of the debtors' bankruptcy case, the

9    reference should remain before Judge Gross here.

10             And because I represent the debtors, I'm going

11   to focus primarily on the core claims against the debtors

12   today.  But we don't think that SNMP's reliance on the

13   noncore claims against Avaya here or its purported jury

14   trial right against Avaya changed the analysis.

15             I'll get into, Mr. Dean has indicated he doesn't

16   think that we necessarily even have the ability to waive,

17   to raise the jury trial right issue with the timing issue.

18   But as I will elaborate, would you maintain SNMP waived its

19   jury trial right both by filing its case in the Bankruptcy

20   Court to begin with where no jury trial was available,

21   particularly given SNMP has admitted it could have done

22   otherwise, and that it filed its noncore claims to the

23   Bankruptcy Court in order to maximize its chances to

24   successfully withdraw its point of reference on the entire

25   case?  And that was in the hearing on the noncore motion

1    hearing before Judge Gross.

2                SNMP asked that if they were concerned about their

3    jury trial rights, why not first file against non-debtors

4    in the District Court and file against the debtors in the

5    Bankruptcy Court?

6                And I think Mr. Dean at that hearing candidly

7    acknowledged they didn't think that that would have worked.

8    They weren't sure that their motion to withdraw would have

9    succeeded if they had just been trying to withdraw core claims.

10               THE COURT:  Well, why isn't it the answer that

11   they thought that it's best that there be just one proceeding

12   in front of one judge?  And why isn't that correct that at the

13   end of the day, I should decide ultimately whether I should

14   handle the entirety of this adversary proceeding or Judge

15   Gross should?

16               MR. GURGEL:  Your Honor, as to the first

17   question that was packed in there, I think that SNMP's

18   approach proceeds from the idea that there is one perfect

19   forum for this case and that it was entitled to a single

20   forum to begin with.  We think as an initial matter, it

21   happens all the time that for various reasons, a party

22   isn't able to sue all defendants in one forum, whether it's

23   personal jurisdiction issues or whatever.

24               What we object to about their decision to

25   proceed in the way that they did was this idea that, again,

1    I think proceeding from the false premise that there was one

2    perfect forum here but they chose to file voluntarily their

3    noncore claims in the Bankruptcy Court in hopes we really

4    think of using those core claims as a lever to extract the

5    core claims that go to much more than just the one sale

6    against Avaya, but the debtors' sales to other buyers who

7    are no longer in this case as well as claims of the

8    debtors' own infringement which relate to proofs of claim,

9    prepetition proofs of claim that are part of a separate

10   contested matter before the Bankruptcy Court, a number of

11   which Judge Gross has jurisdiction.

12          So I think, we think that essentially it was

13   a false premise there.  That they were entitled to go to

14   one forum to begin with when they could have achieved that

15   result differently and chose the method that they did in

16   essence in order to cast their motion throughout the

17   reference in a different light.

18          THE COURT:  Why wouldn't they have just filed

19   suit against you directly in this court under the statute

20   that Mr. Dean referenced if that was their goal?

21          MR. GURGEL:  Your Honor, that is a new argument

22   that SNMP has raised today.  My understanding is that all

23   that Section 959 says is that the Bankruptcy Court's

24   equitable power to hear those claims is preserved or is

25   preserved to claims like that and that any jury trial rights

1    that SNMP would have had would not have been waived had

2    they done that.  But I think as Your Honor indicated, I

3    think the Bankruptcy Court still could have essentially

4    taken those proceedings, had they filed them in the District

5    Court.

6            THE COURT:  So you may be right that there is

7    often not one perfect forum and parties are not always

8    entitled to that.  But where we are today is it seems to me I

9    at least have the option of putting all of this case in one

10   forum.  It could be with me, it could be with Judge Gross.

11   Why shouldn't I be narrowing the options I'm realistically

12   considering to those two?

13           MR. GURGEL:  Your Honor, I think that

14   quantifying the efficiency gains and losses for I guess the

15   three options that are really before Your Honor today, which

16   are putting all the proceeding before Judge Gross, splitting

17   them, or putting all the proceedings before Your Honor, are

18   maybe a little difficult to measure.

19           I think most fundamentally, we disagree with

20   SNMP's characterization that this case isn't about the sale

21   orders, isn't about SNMP's objections to the sale which really

22   are mirror images of the claims that they're now asserting.

23           We think that under the Third Circuit's decision

24   in *Allegheny*, a Bankruptcy Court's claims or issues that

25   implicate a Bankruptcy's Court's interpretation and power to

1    enforce its own sale orders clearly implicate Judge Gross's

2    knowledge in this, and he is really the -- there is a

3    paramount efficiency concern here.  It's that Judge Gross be

4    given the opportunity to rule on the implications of his own

5    orders as well as his rulings on SNMP's objections.

6              I can't begin to recite the entire transfer to

7    those hearings, but we fundamentally disagree with Mr. Dean's

8    characterization.  I know for a fact that there was colloquy

9    between counsel for the debtors and the Court at one of the

10   hearings that addressed an issued that is quite central to

11   this case, which is that as a result of Judge Gross's orders,

12   the various buyers were put on notice.  The way Judge Gross

13   dealt with the objections was by providing the sale orders

14   that the Nortel and SNMP license agreement was not being

15   assigned to the buyers.

16             So these buyers, who are all on notice that

17   they're receiving SNMP's software in certain products, were

18   informed by the Bankruptcy Court that you are getting the

19   stuff, but you don't have a license to use it.  So, in

20   other words, if you want to use it, you are going to have

21   to negotiate your own licenses.  We think that is extremely

22   significant to the defense of the U.S. debtors.  SNMP is

23   trying to blow by that as though it were a nonissue.

24             Mr. Dean also just said that they're not

25   alleging any violations of the sale order.  I'll find

1    the paragraph, but there is actually a paragraph in their

2    complaint that alleges that in at least one case, the

3    U.S. debtors violated their sale order by violating the

4    Bankruptcy Court sale order.  So that issue is right in

5    SNMP's complaint, is front and center, and it is something

6    for the Bankruptcy Court to consider.

7              Going back to the question about splitting,

8    Your Honor.  I think that our ultimate position is that,

9    above all, it's imperative that the core claims against the

10   debtors remain before Judge Gross and that Judge Gross can

11   efficiently conduct a trial even if Your Honor were to

12   decide to split things up.

13             One option even there would be to send pretrial

14   issues back to the Bankruptcy Court.

15             But we think that the absolute worst result

16   from the efficiency point of view is to pull these claims

17   from the Court that is already essentially familiar with

18   them, that is familiar with the sales, and that is actually

19   familiar with other aspects of the debtors' adversary

20   proceeding.

21             Mr. Dean's I think memory went back to earlier

22   this year when we had a status conference on how to proceed

23   with discovery.  There were various points at which this

24   case was stayed, a fair amount of them happened.  One of

25   the non-debtor defendants Radware filed a motion to dismiss.

1     There was full briefing on that in 2013, and Judge Gross

2     ruled on the motion to dismiss and issued an order dismissing

3     some of these claims against Radware.  So to say Judge Gross

4     doesn't have any worthwhile familiarity with this adversary

5     proceeding, again, we think is just wrong.

6                Does that answer your question, Your Honor, or

7     did I miss any part of it?

8                THE COURT:  If it doesn't, I'll come back to it.

9                MR. GURGEL:  Okay.

10               THE COURT:  You may go on.

11               MR. GURGEL:  Fair enough.  I was talking -- I

12    think I was starting to talk about the jury trial right, and

13    the fact we think that SNMP -- and, again, I will get into

14    more detail about that in a moment.  But importantly even if

15    Your Honor were to conclude even if SNMP has a jury trial

16    right here, it wouldn't be a reason to grant permissive

17    withdrawal at this juncture.  It's far from certain that

18    there would ever be a trial in this case.

19               And what we heard I think at the end of

20    Mr. Dean's remarks was the word "trial" again and again and

21    again.  There is going to be a trial.  A trial is going to

22    have to be here.  If there is going to be a trial, it will

23    have to be here.  As Mr. Dean himself acknowledged, Judge

24    Gross could issue a summary judgment order that could

25    substantially narrow the issues and you could consider if a

1    trial is ever necessary.

2            The U.S. debtors believe that they have good

3    defenses.  And as to some of the factual issues that Mr.

4    Dean mentioned that he thinks are live and that demonstrate

5    overlapping facts, as Mr. Dean himself said, discovery in this

6    case just beginning.  It's not clear whether any of those

7    facts would be material or disputed farther down the line in

8    this case.

9            So we think really that SNMP is engaged in a game

10   of looking at hypotheticals when they suggest there is going

11   to be reasons to withdraw the reference from these cases.

12           THE COURT:  Judge Gross could enter an order on

13   summary judgment with respect to the debtors but not with

14   respect to Avaya.  Correct?

15           MR. GURGEL:  I don't think he could issue.

16   Obviously, at summary judgment there wouldn't be any

17   findings of fact.  I guess as to Avaya, his conclusions of

18   law I believe would have to be proposed conclusions of law

19   at summary judgment.  But he could certainly make final

20   determinations regarding the U.S. debtors, including again

21   with respect to his sale orders and, in effect, his rulings

22   on SNMP's objections might substantially narrow the issues

23   here.

24           With that, Your Honor, I would like to walk

25   through some of SNMP's argument in a little bit more detail

1    and just to say why we think that they don't float.

2              On the issue of mandatory withdrawal, I think it

3    is easier to start with that.  SNMP briefs make essentially

4    two arguments on mandatory withdrawal:

5              First, their brief argues, their opening brief

6    argues that this case is going to require extraordinarily

7    complex factual determinations -- and that is a quote from

8    their brief -- including how, and when, 16 copyrights were

9    exploited, who owned what software, and whether there were

10   infringing derivative works.  That is what they laid out in

11   their brief.

12             But as Your Honor notes, the test for mandatory

13   withdrawal, as Mr. Dean acknowledged, is whether there is a

14   substantial material issue in a federal nonbankruptcy law,

15   which we contend doesn't implicate the factual concerns that

16   Mr. Dean has raised.

17             SNMP hasn't identified any interpretative issue.

18   To the contrary, their brief purports to lay out in great

19   detail what the legal standards are with the Copyright Act

20   for resolving these questions that they raised.

21             They cited to one case in Texas where a court

22   thought that withdrawal was warranted on a copyright case.

23   You have mentioned that Judge Gross himself is overseeing

24   copyright cases.  And we pointed Your Honor to another of

25   the cases, including two I believe from the Eastern District

1    of New York that indicate the Copyright Act is not unsettled,

2    provides a clear roadmap that a bankruptcy can follow, and

3    that both those cases declined to withdraw the reference on

4    copyright acts.

5          We think the fact that the various cases that

6    SNMP has cited in its papers demonstrate the kind of cases

7    that do implicate those concerns.  They cite cases like

8    *Pacor* that involve novel questions of federal preemption and

9    security laws, *Ravin* that involved substantial interpretation

10   of regulatory statute resulting in intervention by the FDIC,

11   and other cases involved tax law issues of first impression.

12   Another involved the conflict between the environmental

13   statute and the Bankruptcy code.  Factors like those are

14   absent here, Your Honor.

15         The other thing that they raise is a potential

16   for a complication -- sorry, excuse me -- a complex

17   application of law and fact with regard to damages in the

18   bankruptcy case.  Basically, the damages calculations here

19   might be very complex.  In their brief again, they purport

20   to lay out all the various types of damages they sought

21   under the Copyright Act.  But, again, we think that shows

22   that there aren't any real interpretive issues that

23   implicate this Court's expertise.

24         Further, it's unclear that this case will ever

25   reach the damages stage.  We served -- among the discovery

1  that has happened so far, we've served interrogatories on

2  SNMP asking them to explain what their damages theories are.

3  And in the main, their response was it's too early.  Well,

4  wait until you see our expert reports and we will explain

5  what our damages theories are.

6        So for SNMP to stand here in this argument and

7  say this case is going to involve these complicated issues of

8  damages, at this stage in discovery we don't even know what

9  their damages theories are beyond sort of the recitation of

10  these various factors that the Court will have to consider

11  under the Copyright Act.

12        And, of course, we also believe that the debtors

13  have good defenses as to SNMP claims as I indicated on why

14  would we think the case might never reach the stage where

15  many or all of those calculations were even necessary.

16        Finally, on the issue of mandatory withdrawal.

17  Well, I have a couple more points on mandatory withdrawal.

18        We think SNMP is also incorrect in the way it

19  frames this case as a complex copyright dispute for another

20  reason.  As I have just said, so far we don't think they

21  teed up any complex issues of copyright law, and even the

22  factual issues they teed up aren't supported by anything in

23  the record.  At best, are for some point off in the future.

24        Where there is concrete actual complexity in this

25  case today again is because SNMP's claims are intertwined

1    with Judge Gross's rulings in the sale orders, his rulings on

2    SNMP's objections, his oversight in the sales, which again

3    include far more than just the sale to Avaya that forms the

4    one set of noncore claims that are still left.  SNMP's again

5    seeking damages for Nortel for its sale of Genband, the sale

6    to Ericsson.  So we think there is a lot more here at its core

7    than noncore.

8            Before I wrap up on mandatory withdrawal, I will

9    touch on the two points that SNMP raised in its letter at

10   the end of last week.

11           They claim, as Mr. Dean mentioned, that our

12   joinder motion raises two issues of federal nonbankruptcy

13   law that might implicate this Court's expertise.  Of course,

14   we disagree, and most particularly because the joinder

15   motion is still pending before Judge Gross and won't be

16   decided for at least several weeks.

17           To step back procedurally, SNMP is suggesting

18   in this case that the U.S. debtors can be held jointly and

19   severally liable for a portion of the profits, if any, that

20   were received by the Nortel debtors in the bankruptcy sale

21   and even profits not that were going to the U.S. debtors

22   but any profits that went to the EMEA debtors in Europe for

23   profits that went to the Canadian debtors in Canada.

24           We think that is wrong and the theory is wrong

25   as a matter of law, but in order not to prejudice ourselves

1    we filed a joinder motion to ask that the EMEA debtors be

2    brought into the U.S. proceeding.  The Canada debtors, as

3    you know, are being sued in Canada.

4              So with that background, the first question is

5    whether the EMEA debtors can be held -- as SNMP has framed

6    it, the first question is whether the EMEA debtors can be

7    held jointly and severely viable for profits from SNMP even

8    if the EMEA debtors are not a party to the case.

9              And so that question is perplexing because if

10   the EMEA debtors are joined by Judge Gross in response to

11   our joinder motion, then this question simply will be moot.

12   The EMEA debtors will be a party to the case, and so the

13   question whether they could be held liable if they're not a

14   party won't ever be raised.

15             And even if the EMEA debtors are not joined, we

16   are puzzled by that question because if they're not joined,

17   the question of whether they can be held jointly and

18   severally liable is still not raised by our motion.  We're

19   not seeking to hold EMEA liable in absentia and nor, to my

20   knowledge, has SNMP filed any paperwork indicating that it

21   intends to do so.  We think that this question isn't raised

22   at all by our motion really.

23             THE COURT:  You are saying EMEA, is that right?

24   E-M-E-A?

25             MR. GURGEL:  E-M-E-A.  Yes, Your Honor.

1          THE COURT:  It's an abbreviation, correct?

2          MR. GURGEL:  That's right.  The EMEA debtors:

3   European, Middle East, and Africa.

4          THE COURT REPORTER:  Thank you.

5          MR. GURGEL:  My apologies to the court reporter.

6          So the second question in granting to SNMP is

7   whether the U.S. debtors can hold the EMEA debtors liable

8   for a contribution claim even if the statute of limitations

9   for a direct claim by SNMP is expired.

10         So this statute of limitations, too, is only

11  going to be relevant if Judge Gross eventually decides to

12  joint the EMEA debtors.  And even if the EMEA debtors are

13  joined, SNMP isn't asserting any direct claim against the

14  EMEA debtors, so at most this issue raises a possible

15  defense that the EMEA debtors might decide to raise at some

16  point but it isn't live in this case right now.

17         So we think both of the requests raised in

18  SNMP's letter last week really involve speculative matters.

19  They turn at least in part to the outcome of the joinder

20  motion.  And, of course, we don't concede that really either

21  question raises an unsettled question of law, much less one

22  of federal and bankruptcy law.

23         THE COURT:  So even if you are right about their

24  impact on the mandatory withdrawal analysis, do I need to

25  consider all of those factors related to your joinder motion

1    when I consider discretionary withdrawal?  The suggestion

2    today at least is it's going to go right to the heart of

3    what a trial ultimately in front of me is going to look

4    like.  So maybe that is a point in favor of permissive

5    withdrawal so that I can resolve that for myself.

6            MR. GURGEL:  Well, Your Honor, first, I'd

7    certainly agree that Your Honor is entitled to consider the

8    entire factual context of the case in so far as the *Pruitt*

9    factors.

10            I don't really see how this fits in.  Again, I

11    think that it's speculative as to whether a trial of facts

12    is ever going to be necessary in this matter.

13            And I also think that Judge Gross -- I think

14    maybe Mr. Dean suggested that Your Honor might even want to

15    rule on the motion.  I think that, again, Judge Gross is the

16    one who has overseen this proceeding, who understands the

17    implications perhaps of joining EMEA in the context of a

18    larger bankruptcy dispute between the Nortel estates.  I

19    think he is in the best position to decide this.

20            So, again, I think that they really raised a

21    speculative issue.  I don't think that the joinder in

22    addition to the defendant is something that, even if Your

23    Honor would take notice of it, would substantially tilt

24    the argument at all in favor of withdrawal of the reference.

25            So, Your Honor, on permissive withdrawal, I

1    think it is helpful to walk through the factors.  And as

2    we have been focusing on, as Mr. Dean focused on, we have

3    really kind of two buckets of claims against the U.S. debtors.

4    We have the sale-based claims that go to the transfers of

5    assets by U.S. debtors, the EMEA debtors, and the Canada

6    debtors that expires, and you have what I will call the

7    use claims which are in the postpetition period from the

8    petition date until the sales that the debtors were

9    allegedly engaged in infringing these alleged products

10   of SNMP.  Again, the U.S. debtors, the Canadian debtors, and

11   the EMEA debtors.

12            On the sales claims, we cited a number of cases

13   where the District Court has decided where a Bankruptcy

14   Court has substantial familiarity with the disputed issue

15   and the relevant facts, the reference should remain in the

16   Bankruptcy Court.

17            And one District Court in particular, the

18   *Langenkamp* opinion that we cited in our brief at page 11,

19   noted the Bankruptcy Court had previously ruled on

20   objections in that case that were similar to the claims

21   that were filed in the adversary decision, and we think

22   that applies with great force here.

23            As I mentioned at the outset, Mr. Dean has

24   suggested that the Court's sale orders, his rulings on

25   SNMP's rejections are somehow not relevant.  We don't

1    see how that can possibly be true given the complaint

2    specifically alleges that we violated the sale orders and

3    given that we believe Judge Gross's various rulings give

4    the debtors good defenses to SNMP's claims as well as to

5    the amount of damages that can possibly be attributed or

6    profits that can be attributed to any SNMP software.

7              As to the use claims, and I mentioned this in

8    my leadoff as well, Your Honor, these use claims that relate

9    to the postpetition period are basically extensions of

10   prepetition proofs of claims that were filed in the

11   Bankruptcy Court.  And those claims are the subject of a

12   separate contested matter before Judge Gross and allege

13   essentially the exact same postpetition conduct claims that

14   SNMP is now trying to withdraw.  So these claims as well,

15   the efficient thing to do is to keep them before the

16   Bankruptcy Court that has already gotten prepetition claims

17   before it.

18             THE COURT:  So regardless of what I do on the

19   motion, the prepetition claims will stay with Judge Gross.

20             MR. GURGEL:  I think SNMP has suggested, Your

21   Honor, in a footnote in passing that Your Honor could sua

22   sponte withdraw the reference on the prepetition claims as

23   well.  We don't think that has been properly briefed.

24             It really just heightens our concern here with

25   regard to kind of the balance of core versus noncore issues

1    for the reasons that I have mentioned, and we already think

2    that the core issues would predominant inasmuch as I said a

3    couple times, SNMP's claims against the debtors implicate

4    every sale that they have made in their complaint, Genband,

5    Ericsson, et cetera, whereas the noncore claims are simply

6    one sale to Avaya.

7            And to the extent that SNMP is now suggesting

8    Your Honor could also withdraw prepetition core bankruptcy

9    claims from the Bankruptcy Court, that just heightens our

10   concern that the tail is being used to wag the dog here and

11   that the noncore claims are being used as a lever to extract

12   the core claims from the Court that has got the most

13   familiarity with them and that would ordinarily be expected

14   to rule on these types of claims in the court of allowance

15   and disallowance of claims against the estate.

16           We also do think, notwithstanding what SNMP

17   said, that efficiency and economy also support keeping the

18   sale of claims and used claims in the Bankruptcy Court

19   because of the parallel claims that SNMP has filed in the

20   Canadian Court.  And I won't repeat but I would say there

21   has already been substantial coordination certainly between

22   the parties on discovery.

23           The Bankruptcy Court and the Canadian Court have

24   coordinated extensively in the past, including during the

25   allocation trial last year, that issued an opinion as to

1    essentially which debtors were eligible to receive which

2    portions of the bankruptcy business line sales that SNMP is

3    now claiming.

4             While those allocations decisions are on appeal,

5    the Court certainly has some background that will be helpful

6    with respect to considering SNMP's claims, for example, that

7    the U.S. debtors can be held jointly and severally liable

8    for alleged profits that went to the Canadian debtor or the

9    Canadian debtors.  We think that, in other words, that SNMP

10   claims really do implicate the Court's experience in the

11   allocation proceedings.  As Mr. Dean mentioned, Judge Gross

12   has entered a scheduling order in an effort to kind of keep

13   the proceedings as closely together as possible.

14            To address a couple of SNMP's arguments, Your

15   Honor, SNMP I think has raised three main arguments as to

16   why it would be more efficient to skip the Bankruptcy Court

17   and take the case away from that Court that is most familiar

18   with the claims.

19            The first is this idea only this Court can

20   enter final orders and judgments on all the claims in the

21   adversary proceedings.  I think Your Honor actually

22   addressed this recently last December in another adversary

23   proceedings, *Longview Power*, where the same argument was

24   raised and that only the District Court could enter final

25   order and judgments, and Your Honor commented from your

1     experience with Magistrates that it's been your experience

2     that not withstanding what you might have, you might not

3     be able to skip a step as SNMP wants to do.  It's often the

4     case that no objections or only limited objections are taken

5     from a Report and Recommendation.  And the same thing could

6     apply from the Order from the Bankruptcy Court.  In that

7     context, there may be substantial efficiency gained again

8     from leaving the Court with the case that is most familiar

9     with it, not withstanding this Court -- or I should say even

10    if Your Honor were to find that only you can enter a final

11    orders and judgments on all the claims.

12          And SNMP also brings up the related point of its

13    purported jury trial right as to Avaya.  I think, again,

14    that issue was also live with *Longview Power*.  And, again,

15    the takeaway there was that while a jury trial was possible

16    at some point, the proceeding might never get there, and

17    so it would be premature to withdraw the reference on that

18    basis.

19          SNMP had cited various cases in its brief, and I

20    think they cited two of them to you during their argument,

21    the *NDEP* and *Uni Marts* cases.  And what is interesting about

22    both those cases which talked, according to SNMP's brief,

23    about automatic reference for a jury trial, both of those

24    cases involve exclusively noncore claims which doesn't get

25    mentioned in SNMP's brief.

1           SNMP also cited a few cases suggesting that jury

2   trial was a reason to immediately withdraw the reference.

3   And those were cited again on the final page of their reply

4   brief.

5           What is interesting about three of those cases,

6   I think they recited the *Uni Marts* and cited three more

7   cases, literally the same sentence appears in each of those

8   three other cases, which said in each case the parties

9   existing withdrawal of the reference offered no reason why

10  the case should remain with the Bankruptcy Court.

11          THE COURT:  So where is that quote exactly?

12          MR. GURGEL:  I might not quote it exactly but

13  an identical sentence appears in each case, and we think we

14  have given substantial reasons here why even if Your Honor

15  were to find a jury trial right, it wouldn't require -- it

16  wouldn't be efficient to immediately withdraw now.

17          We also think that if you look at the history of

18  this case, that is another reason to think that the jury

19  trial might be speculative.  When this case began, it was

20  filed not only against Avaya among the nondebtor defendants,

21  but also against Radware, Genband, Performance Techs, and a

22  few other affiliates.  And as Mr. Dean indicated, all those

23  non-debtor affiliates are now gone.

24          So I'm probably understating that it would be a

25  shame, to say at least, if the reference were withdrawn now

1    on the basis of purported jury trial rights for Avaya which

2    is the only defendant, the only non-debtor defendant left

3    standing in this case.

4              THE COURT:  I did wonder that.  Let's just say I

5    withdrew the reference and then Avaya disappears.  Maybe

6    there is a settlement, for instance, and I'm left just at

7    that point I guess with core claims against the debtors.

8    Can I withdraw the reference sua sponte at that point and

9    send you all back to Judge Gross or do I have your case at

10   that point?

11             MR. GURGEL:  Standing here today, Your Honor,

12   I'm actually not sure.  Let's assume that you could do that

13   at that stage.  I think that is going to the efficiency

14   question, would it be no harm/no foul.

15             And I think that at that point, probably the

16   case would have been taken from the Bankruptcy Court for

17   some period of time.  Again, you have to recalibrate and you

18   are shifting proceedings back to the another court or the

19   court that had the most familiarity with the core claims

20   could have kept them and was prepared and ready to move them

21   forward.

22             There is a second argument that SNMP raises I

23   think in their brief that relies on the case called *Appleseed*'s.

24   And this is the issue that Mr. Dean raised about, because

25   you have core and noncore claims in the case, there is the

1    possibility that you would have different standards of review

2    applying to a single fact that was relevant to both the core

3    and the noncore claims.  And I think that that argument also

4    did not prevail on *Longview Power* because while it be a

5    concern, it could also turn out to be a hypothetical problem.

6          The overlapping fact that SNMP identifies in

7    its brief relates to what SNMP sought or was transferred to

8    Avaya and what Nortel products contain that software, but

9    that issue is the subject of ongoing discovery and so it's

10   hypothetical in that sense as well.  As I mentioned before,

11   when these sales occurred, there was knowledge that certain

12   products contained SNMP software.  There are schedules and

13   lists that contain some of this information.  So to cast

14   this as an issue that is certainly to be a disputed issue

15   of material facts I think at the very least is premature.

16         Again, I mentioned that on the overlap point, as

17   I mentioned a couple times now, and not to repeat myself, I

18   think it is an important point.  Concerning the core and

19   noncore claims, it is important to realize that to the

20   extent there is any overlap, Avaya again is just one of

21   many buyers that Nortel is being sued on.  So really as to

22   the sale-based claims, to the extent that there is any

23   connection, the parallel, the overlap of the claims against

24   Avaya just represents a subset of what is being alleged

25   against the U.S. debtors.  We think that is another reason

1    why it's premature to think that there will be such massive

2    overlapping facts here that the reference needs to be

3    withdrawn.

4              Finally, I guess, SNMP in its brief obviously

5    relied on the idea -- or finally on the efficiency point,

6    SNMP relied in its brief on the idea that there would be

7    efficiency gains because it could consolidate this case with

8    the Red License and Blue License case.  SNMP has now said it

9    is not going to consolidate this case with the Red License

10   case.

11             Furthermore, if it were to, then I think

12   Mr. Dean's comments about the possibility to have a trial

13   before Your Honor, obviously, and the efficiency gained, if

14   any, to be gained by having before this Court results of

15   hearing the appeal and the sale orders would go away.  So

16   I'm not sure where that leaves them, but it's clear that

17   don't get any efficiently gains from the Red License case,

18   and I believe Mr. Dean said they have also agreed not to

19   join the Blue License case.  I could be wrong, and I'm sure

20   he would correct me.

21             Your Honor, I will try to cover the other facts

22   more quickly.  I think the efficiency is the hardest to

23   get through.  I think on expedition, it would really go

24   to efficiency.  And I would add Judge Gross has now twice

25   expressed his concern that withdrawal of the reference is

1  going to delay the resolution of the debtors' bankruptcy

2  cases here.

3          Mr. Dean I think argued it is all kind of

4  irrelevant because we have these appeals going and it's

5  going to be a long time before the cases are resolved

6  anyway.

7          I would submit that that is not a reason to

8  delay the resolution of the remaining claims against the

9  debtors.  As the allocation decisions currently stand, the

10  allocations to each estate turn on the amount allowed

11  against the estate.  So the few remaining outstanding

12  creditor claims out there really are one of the last

13  impediments to the conclusion of the debtors' bankruptcy

14  cases.

15          THE COURT:  What about the suggest then that

16  the schedule Judge Gross evidently has in mind for this

17  adversary proceeding is not going to hold and that you all

18  already are behind what he envisioned?

19          MR. GURGEL:  Well, I think a couple things

20  there, Your Honor.  I think just to take a section with one

21  remark that Mr. Dean made.  He indicated that they hadn't

22  even gotten information they needed for their expert reports

23  yet.  I think that is in part because SNMP served its

24  document requests on us just two weeks ago.

25          I think more broadly not to quibble, I do

1    understand that, I don't want to speak for other parties,

2    that there may be plans and there is a plan to move for a

3    schedule extension, whether Your Honor withdraws here or

4    before Judge Gross.  And I don't think that any proposal --

5    no proposal has actually been submitted to the Bankruptcy

6    Court yet.  And the schedule won't hold.  We could be

7    talking about a shift of, I don't know, a couple months,

8    maybe more than that.  But I think it is speculative to say

9    that that renders the expedition concern irrelevant.

10           Certainly, discovery has proceeded at apace in

11   Canada, a substantial amount of discovery was taken up

12   there.  That discovery has been shared with the U.S. debtors

13   in this proceeding.  And at least in the past, SNMP has

14   expressed its desire to minimize the need for duplicative

15   overlapping discovery.  So we do think it is important that

16   things continue apace in the U.S. Court and to keep up with

17   Canada to the greatest extent possible.

18           On uniform administration of the bankruptcy laws,

19   Your Honor, I'll just say that the arguments in SNMP's brief

20   that it's not an issue because uniform administration of the

21   bankruptcy laws aren't implicated by these nonbankruptcy law

22   claims, Your Honor pointed out in *Longview Power,* that was a

23   case that involved California state law claims, but you also

24   have to be concerned about the uniform administration of the

25   bankruptcy proceedings.

1          Again, here where you have parallel claims in

2     Canada, you have the Bankruptcy Court on sale orders that are

3     implemented, we think that that factor certainly weighs in our

4     favor.

5          I think the last two things I need to mention is

6     forum shopping, and a jury trial.  I hope I'm not pressing

7     too close on time.

8          THE COURT:  There is about five minutes left,

9     and I do want to talk to Avaya briefly so use a couple minutes.

10         MR. GURGEL:  Okay.  Sure.

11         So one of our principle concerns, as I have said,

12    the noncore claims against Avaya, is SNMP is attempting to

13    use them it as a lever or a bootstrap for withdrawal of more

14    substantial core claims from the Bankruptcy Court where they

15    belong and SNMP's mantra has been this has always been about

16    one, just having claimed in one forum, and the plan has always

17    been to get them to the District Court eventually.

18         First, we think the premise is flawed because

19    there is no one perfect forum in this case.  The claims

20    against the Canadian debtors are now being heard in the

21    Canadian Court that oversaw the bankruptcy sales, just as we

22    assert that the claims against the U.S. debtors should be

23    heard in the U.S. Court, they oversaw those sales, which is

24    the Bankruptcy Court.

25         We think that SNMP's one forum premise is also

1    flawed.  We touched on this in response to Your Honor's

2    question a little bit earlier that SNMP has a right to have

3    all the claims heard in a single forum.

4              And SNMP says that, at least they made a new

5    argument today about what they could have done, but when

6    asked this question by Judge Gross about two months ago,

7    SNMP acknowledged that the reason they filed all the claims

8    in the Bankruptcy Court was because they were worried that

9    a motion to withdraw just the core claims would not have

10   worked in sum and substance.

11             We think that is essentially tantamount to an

12   admission this is about forum shopping, that the goal to

13   filing noncore claims with the debtors is to strengthen the

14   eventual motion to withdraw.

15             I'm not suggesting anything any nefarious about

16   that.  But in litigation, the choices a party makes have to

17   count, and forum shopping is a fact that *Pruitt* directs

18   courts to guard against in considering these types of motions.

19             Lastly, Your Honor, I'll talk a little bit about

20   the jury trial right.

21             Again, we don't think that it's a basis for

22   withdrawal at this time regardless of what Your Honor

23   defined, but we are maintaining our position that SNMP has

24   waived any jury trial rights it might have had as to noncore

25   claims against Avaya both by filing in the Bankruptcy Court

1    and by its postpetition conduct.

2            We have cited the case law to the effect that a

3    motion to withdraw the reference has to be made promptly in

4    order to preserve the jury trial right.  SNMP says it's

5    been our intention all along but we couldn't do it for this

6    reason or that reason.

7            First, on the letter agreement, Your Honor.  And

8    I don't have the text letter agreement in front of me, but

9    the sentence that Mr. Dean referenced where the U.S.

10   debtors, Canadian debtors promised not to raise a timeliness

11   argument specifically indicate they agreed not to raise that

12   argument "because of the mediation."  The mediation was

13   never a bar to SNMP's ability to withdraw the reference as

14   to various non-debtor defendants.

15           THE COURT:  The claim, it was with respect to

16   the debtors.

17           MR. GURGEL:  Yes, Your Honor, it was.  But this

18   is why we don't think the letter agreement stands as a bar

19   to our ability to raise these claims.

20           We're not arguing that SNMP unduly delayed

21   moving to withdraw the references against the debtors.  But

22   we are objecting to the fact that they were on notice that

23   they had a purported basis to withdraw the reference.  They

24   indicated in their reply brief on the motion to -- in the

25   Radware motion to dismiss in mid 2013 that they "may decide

1    to withdraw the reference."  And there was a colloquy with

2    Judge Gross at the hearing about withdrawing the reference

3    and still the reference wasn't withdrawn.  So they could

4    have withdrawn as to the non-debtors at any time.

5            THE COURT:  All right.  I am going to have to

6    stop you there.  Just one more question.

7            I have this stipulation in front of me.  Did the

8    debtors have any objection to me signing it?

9            MR. GURGEL:  I don't think we object.  No, Your

10    Honor.  Although to clarify, I think at one point early on

11    in its brief, SNMP said that, well, it seemed to suggest

12    that Avaya joined or was supporting a motion to withdraw,

13    and that is not certainly our understanding.

14            THE COURT:  All right.  Well, I'm going to get

15    Avaya up here just now.  So thank you.

16            MR. GURGEL:  Okay.  I wanted to talk about

17    *Billing* for a moment, if Your Honor was interested, but I

18    understand.

19            THE COURT:  I'm sorry.  We've already gone over

20    the time.

21            MR. GURGEL:  Thank you very much, Your Honor.

22            THE COURT:  Let me give a couple minutes to

23    Avaya.  And I guess you could start by clarifying, do you

24    have a position on whether I should withdraw?

25            MS. PARLIN:  At this stage of the game, Your

1    Honor, we would prefer that if the case is going to be

2    withdrawn as to Avaya that it be done now and that the case

3    proceed in District Court.  We think that it would make more

4    sense from the schedule perspective and just from an overall

5    oversight perspective that the case proceed in the District

6    Court.

7           It probably should have been filed here to

8    begin with against Avaya.  Avaya was brought along into the

9    Bankruptcy Court, I think.  It's still not really clear to

10   me why the case was originally filed against Avaya but in the

11   Bankruptcy Court.  But to the extent that it's going to end up

12   here at some point or another, we would rather it end up here

13   now and just go along that way.

14          THE COURT:  Now, there has been back and forth

15   on the possibility of a partial withdrawal.  Does Avaya have

16   a view?  If you think you should essentially be here, do you

17   have any view on where the debtor should be or is that not

18   of a concern to you?

19          MS. PARLIN:  We don't have any problem with the

20   debtor staying in the Bankruptcy Court.

21          THE COURT:  Okay.

22          MS. PARLIN:  We're not taking a position on that.

23          THE COURT:  And the stipulation, you still want

24   me to sign it; correct?

25          MS. PARLIN:  Yes, Your Honor.

1           THE COURT:  Those are my questions for you.  Is

2      there anything else you want to add?

3           MS. PARLIN:  I simply would say that while it

4      isn't clear what is going to happen going forward, whether

5      there will be a trial or not be a trial or how that will all

6      play out, I do think it makes more sense that if we're going

7      to end up here, if it does happen that we'll end up here,

8      that we start here.  And that is from our -- while our

9      client was perfectly content to stay in the Bankruptcy

10     Court, if it wasn't going to stay in the court throughout,

11     if it's not going to happen, it would prefer to be in a

12     place where an ultimate judgment will be entered.

13          THE COURT:  And if I were not to do that, how

14     would your client be prejudiced?

15          MS. PARLIN:  In part because then we'll be held

16     hostage to a schedule that is directed towards the benefit of

17     the debtors.  Frankly, we understand that the debtors have

18     their own issues, and we're not saying that they shouldn't

19     have their own issues.  That's the debtors interests, and we

20     understand those interests.

21          But this is a very serious case against Avaya.  I

22     think that you heard Mr. Dean say that their damages claims

23     are upwards of $100 million against Avaya.  That is a very

24     large claim against our client.  We take this very seriously,

25     and we think that the litigation should be given, the litigants

1    and Avaya in particular, which is often treated as sort of

2    the tail wagging the tail here, not wagging the dog but

3    literally just the tail, to have a full and fair opportunity

4    to litigate the case, which means to conduct discovery.

5         When we first got into this, we thought maybe

6    the discovery won't end up being so broad because frankly

7    the plaintiffs didn't serve any.  We served ours at the very

8    beginning when Judge Gross issued his scheduling order, and

9    the responses we got were sort of see the Red case which is

10   the other cases before Judge Andrews.  So we thought, well,

11   maybe it won't be.  But now it looks like it's going to be

12   actually much broader than that.

13        And there is, as Mr. Dean suggested, there are a

14   number of subpoenas that have been issued to other buyers of

15   Nortel products that's going to broaden out the discovery.

16   And we think that it will be brought, and as to Avaya it

17   will be brought.  So under the circumstances, we want a full

18   and fair opportunity to litigate the matter.

19        THE COURT:  And despite all of this view now,

20   you did oppose the motion to withdraw when it was filed?

21        MS. PARLIN:  Because we thought that we had a

22   fair and reasonable basis to oppose it, and we were content

23   to stay before Judge Gross if we would stay there for the

24   full case, but sort of weighing all the possibilities and

25   particularly -- we were before the Court in February, and

1    we made it very clear at that point that we didn't want

2    to be held hostage to the debtors' schedule.  We filed an

3    objection to a scheduling motion that the debtors filed at

4    that time.  We thought that there would be a reasonable

5    schedule entered into the case with respect to Avaya.

6              THE COURT:  Is there anything else?

7              MS. PARLIN:  No.

8              THE COURT:  All right.  Thank you.  We'll give

9    the moving parties another couple minutes for rebuttal.

10             MR. DEAN:  Thank you, Your Honor.  Just a couple

11   quick points.

12             Mr. Gurgel mentioned the coordination with the

13   Canadian Court but then he only talked about the coordination

14   between the parties in the case and the coordination between

15   the Canadian debtors and the U.S. debtors, and if the

16   references are withdrawn there would be nothing to stop the

17   parties from continuing to coordinate.  He mentioned nothing

18   about coordination with the Court, however.

19             With respect to the comments that he alleges

20   that I made at the Bankruptcy Court hearing that filing a

21   complaint against Avaya here first wouldn't have worked,

22   what I was referring to was Judge Gross asked -- my

23   recollection of it, I don't have the transcript here, but my

24   recollection is he asked me why don't you just sue Avaya in

25   District Court, go after the Canadian debtors in Canada, go

1  after the U.S. debtors?  Why don't you just do that?  I said

2  I wouldn't have been able to -- I don't think I would have

3  been able to bring all the parties together in a single

4  lawsuit unless I commenced the lawsuit in once place.  And

5  the only way I could have done that, based on the agreement

6  we reached with the Canadian debtors, was to start the case

7  in Bankruptcy Court, and that is why we did what we did.

8          Mr. Gurgel alleges that I made this new argument

9  today regarding 28 U.S.C. 959(a).  Two points on that.

10          No. 1, this was an argument that I expressly

11  made at the hearing in front of Judge Gross, so he fully

12  understands that we have this position.

13          No. 2, the reason I raised it for the first

14  time in the briefs before this Court is because in the

15  August 24th letter was the very first time that the debtors

16  advocated for a partial withdrawal of the reference.  So

17  the issue never became relevant until they raised partial

18  withdrawal of the reference in their letter, so that is

19  why the issue was coming up for the first time today.

20          With respect to the sale hearing issue.  This

21  isn't about the assignment of the license agreements.  What

22  we allege is that they didn't -- that Nortel actually

23  transferred our source code, our software, our property, not

24  the license agreements themselves to asset buyers.  That is

25  the premise of the case.  Whether the license agreements

1   were transferred or assumed and assigned in the bankruptcy

2   is not an issue in this case at all, and Mr. Gurgel simply

3   either doesn't understand that or he wants the Court to

4   think this is something that Judge Gross said at the sale

5   hearing about the assignment of the license agreement.

6           There is no dispute that the license agreements

7   were not assigned and could not be assigned under the

8   Bankruptcy Code without express authority from us.  But

9   this is about transferring our software, not the license

10  agreements itself.

11          With respect to summary judgment issue, Your

12  Honor, if Judge Gross were to decide summary judgment on

13  these claims and you denied withdrawal or you said we have a

14  right to withdraw the reference but you are going to keep

15  the case there until trial, the way this is going to work is

16  the judge is going to rule on dispositive motions and he is

17  going to be able to issue final orders with respect to the

18  same issues that he can only issue proposed findings and

19  conclusions as to the issues related to Avaya.

20          Some of these issues may be the same.  So the

21  debtor would be in a position of having to appeal a summary

22  judgment order and Avaya would be in a position of having to

23  object to proposed findings and conclusions.  I believe that

24  would create a chaotic nightmare with respect to any ruling

25  on a motion for summary judgment; and I think the most

1    efficient thing to do is just to take the case now to avoid

2    that.

3              With respect to the joinder motion, Mr. Gurgel

4    misstates the issues that we presented.  He stated that our

5    issues of first impression were whether the EMEA, whether we

6    could assert damages against the EMEA debtors if they were a

7    party, and that is the reason why the outcome of that motion

8    is determinative of the issue of first impression, but that

9    is not what we say in our letter to the Court.

10             Our issue of first impression is whether we

11   can assert damages against the U.S. debtors, not the EMEA

12   debtors, depending on whether or not the EMEA debtors are a

13   part to the lawsuit and could be found to be a practical

14   partner.  So that is an entirely a different proposition and

15   one that is does not hinge on the outcome of that motion but

16   one that was raised based on that motion being filed.

17             A couple more things.  The proofs of claim.  The

18   statute specifically says that the Court may withdraw the

19   reference as to any matter on its own motion or motion by

20   the parties.  If the Court decides to withdraw the reference

21   of this adversary proceeding, the proofs of claim are just

22   staggering right now.  There is nothing happening with the

23   proofs of claims.  Nothing is happening.

24             So we propose a couple things.

25             One, we think it is appropriate for the Court

1   to just take the proofs of claims if they're going to take the

2   litigation because there is conduct that happened prepetition

3   reflected in those proofs of claim that continued into the

4   prepetition post-sale period.  Our first theory of the case

5   against the debtors was that they were using our software

6   outside the scope of the license.  It's just for the

7   prepetition portion of that conduct.  So we do think it would

8   be appropriate to take that case up.  And I think the debtors

9   should agree.  That if they're really so concerned about this,

10  then they should agree to allow the reference to be withdrawn

11  as to the proofs of claim as well if you are going to take

12  the other case up because that way we won't have to have

13  litigation on proof of claims in front of Judge Gross.

14          But, alternatively, as we said in the reply

15  brief, we will stipulate right now to agree to hold those

16  proofs of claim in abeyance pending a trial, and then we

17  won't have to do any work on the proof of claim until it is

18  decided, and then it will resolve itself through the trial

19  in this case.

20          So there are ways to deal with the proof of

21  claim.  I just proposed three, and I think either one of

22  those would be appropriate in this case.

23          One other point, Your Honor.  This is not the

24  tail wagging the dog.  As I said at the beginning, we think

25  we have $100 million plus damages against Avaya and Nortel.

1      This is not like we have a $10 claim against Avaya and we

2      filed a lawsuit against Avaya and added them to this lawsuit

3      to bring a nominal defendant up.  So I think the whole tail

4      wagging the dog concept or the whole bootstrapping argument

5      rings hollow.

6              Then the one point I want to address finally is

7      the issue that Your Honor raised about, well, what if there

8      is an settlement against Avaya?

9              If the Court finds in its decision on this

10     motion that we don't have an independent basis to withdraw

11     the reference of the entire case even though this is a

12     copyright case and mandatory withdrawal of reference isn't

13     appropriate, and the sole basis for us to be able to do this

14     is based on the jury trial rights as to Avaya, I believe

15     that the Court could send the case back down, and we

16     wouldn't object to that if the Court finds the only reason

17     we have the case here is because of Avaya.  We think that

18     mandatory withdrawal of the reference would require it

19     anyway and all the other factors, but if you hold that the

20     jury trial right is the sole reason why you are withdrawing

21     the reference to the entire case right now, we would have no

22     problem.  And I don't think there is anything in the statute

23     that would prohibit you from sending the case back down if

24     we settled with Avaya, which frankly is simply just not

25     going to happen, we don't think.

1              Thank you, Your Honor.

2              THE COURT:  Okay.  Thank you.  I thank all

3     counsel for helpful argument, and we'll take the motion

4     under advisement.  We will be in recess.

5              (Hearing ends at 11:56 a.m.)

6

7         I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

8

9                        /s/ Brian P. Gaffigan
                         Official Court Reporter
10                        U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25